[No. C036184. Third Dist. Oct. 16, 2002.]

CITY OF LINCOLN, Plaintiff and Appellant, v.
DONALD L. BARRINGER et al., Defendants and Appellants.

COUNSEL

Dolle & Dolle, Hodge L. Dolle, Jr., Thomas M. Garcin; McDonough, Holland & Allen, G. Richard Brown and Stacey N. Sheston for Plaintiff and Appellant.

Martinez & Kaminski and Daniel R. Martinez for Defendants and Appellants.

**OPINION**

**SIMS, Acting P. J.**—Plaintiff City of Lincoln (the City) initially sought to acquire by eminent domain (Code Civ. Proc., § 1230.010 et seq.[1]) a portion (Partial Take) of property owned by defendants Donald L. Barringer and Carol S. Barringer (the Barringers).[2] While the eminent domain action was pending, the City adopted a new resolution of necessity and amended its eminent domain complaint, seeking to acquire the remainder of the Barringers' property interests (Remainder or Remainder Parcel) as a "remnant"

---

[1] Undesignated statutory references are to the Code of Civil Procedure.
[2] Other defendants are not parties to this appeal.

(§ 1240.410), in addition to the original Partial Take, such that the City sought to acquire the entire Barringer ownership. The trial court dismissed the eminent domain action as to the Barringers, determining (1) the City failed to give adequate notice of the public hearing; (2) the Remainder of the Barringers' property was not a "remnant" subject to acquisition along with the Partial Take; and (3) the City abandoned its initial action to condemn only the Partial Take.

On appeal, the City does not challenge the trial court's rejection of its "remnant" theory and does not seek the entire Barringer ownership.[3] Instead, the City argues it gave adequate notice; it did not abandon its initial condemnation action for the Partial Take; and the court should have *conditionally* dismissed the action to allow the City to cure any defects and proceed on the Partial Take.

The City also seeks reversal of the trial court's order awarding litigation expenses to the Barringers, and an order to show cause (OSC) re contempt (stayed pending appeal) for disobeying the court order and failing to deposit the litigation expenses immediately.

The Barringers cross-appeal from the trial court's determination that there was no gross abuse of discretion by the City that would invalidate the resolutions.

We shall reverse the judgment (dismissal order) and the order awarding litigation expenses, and direct the trial court to dismiss the OSC re contempt. We shall direct the trial court to enter an order conditionally dismissing the proceeding to the extent it purports to take the Barringers' Remainder Parcel, and to award the Barringers their reasonable litigation expenses for defending against the taking of the Remainder Parcel. We shall reject the cross-appeal.

### Factual and Procedural Background

On June 25, 1998, the City filed a complaint in eminent domain against the Barringers (and other defendants who are not parties to this appeal), alleging 6,000 acres in the southeastern part of the City were the subject of a "Revised Twelve Bridges Specific Plan," and development within the plan area required construction of extensive off-site improvements, including roadways, utilities and water, wastewater and drainage facilities, and the acquisition of easements, rights-of-way and fee simple interests for such improvements (the Off-Site Improvement Project). The complaint attached

---

[3]We therefore need not address the Barringers' arguments that the Remainder does not meet the statutory definition of a "remnant."

resolution No. 98-66, a resolution of necessity adopted by the city council at a meeting on June 23, 1998, authorizing the City to bring the condemnation action to acquire the easements, rights-of-way, and fee simple interests.

With respect to the Barringers' property, the initial complaint sought to acquire only part of their property (which the City refers to as a Partial Take). Thus, the Barringers' land covered 8.9 acres. The City initially sought to acquire permanent interests in 0.776 acres (consisting of a fee interest in 0.236 acres, a permanent road easement over 0.032 acres, a nonexclusive public utility easement over 0.508 acres), and a three-year construction easement over 0.605 acres. The Barringers' Remainder would be approximately 7.5 acres.

At the City's request and over defense objections, the trial court in July 1998 granted an order for immediate possession, pursuant to which the City took possession of the property interests described in the initial complaint and completed construction of the Off-Site Improvement Project.

The Barringers opposed the taking, claiming the resolution was invalid due to defective notice and failure of the City to make necessary findings.

The City and the Barringers exchanged statements of valuation setting forth the fair market value of the Partial Take and damages alleged to have been caused to the Remainder by virtue of its severance from the Partial Take. For purposes of this appeal, we need only note that the parties' valuations differed wildly.

After receipt of the three valuation statements from the Barringers, the City decided to seek acquisition of the Remainder as a "remnant" under section 1240.410,[4] which authorizes such acquisition where a partial take leaves a Remainder with little market value.[5]

---

[4]Section 1240.410 provides:

"(a) As used in this section, 'remnant' means a remainder or portion thereof that will be left in such size, shape, or condition as to be of little market value.

"(b) Whenever the acquisition by a public entity by eminent domain of part of a larger parcel of property will leave a remnant, the public entity may exercise the power of eminent domain to acquire the remnant in accordance with this article.

"(c) Property may not be acquired under this section if the defendant proves that the public entity has a reasonable, practicable, and economically sound means to prevent the property from becoming a remnant."

[5]On appeal, the City says the decision to treat the Remainder as a remnant followed investigation and recommendation by City staff. The Barringers call this a misrepresentation; they assert City staff was not involved, and the decision to treat the Remainder as a remnant was made by attorneys selected and paid by project developer Del Webb. For purposes of this

On July 29, 1999, the City sent an offer letter (Gov. Code, § 7267.2) to the Barringers to acquire their entire 8.9-acre parcel.[6] The Barringers rejected the offer. The City also gave notice to the Barringers of a public hearing set for August 12, 1999, at which the city council would consider adoption of a resolution of necessity to acquire the Remainder as a remnant.

At the conclusion of the August 12, 1999, public hearing, the city council adopted resolution No. 99-120, authorizing the City to amend the condemnation complaint or file a new complaint, at the discretion of the City's special counsel, to acquire by eminent domain the entire Barringer ownership. Resolution No. 99-120 set forth the following findings by the city council:

"1. As found and determined in Resolution No. 98-66, the public interest and necessity require the Off-Site Improvement Project;

"2. As found and determined in Resolution No. 98-66, the Off-Site Improvement Projects are planned or located in the manner that will be most compatible with the greatest public good and least private injury;

"3. The taking of the easements, right(s)-of-way and fee simple interests described in [exhibits to] Resolution No. 98-66 has left the remainder of the Barringer Ownership in such size, shape and condition to be of little market value and therefore has created an 'uneconomic remnant' under Sec. 1240.410;

"4. The entire Barringer Ownership . . . therefore is necessary for the Off-Site Improvement Project and the Revised Twelve Bridge Specific Plan Project . . . ."

The City thereafter filed a motion for leave to amend its complaint to include the entire 8.9 acres of the Barringers' property. The Barringers opposed the motion and urged that any leave to amend should be conditioned on the imposition of litigation expenses. The trial court (Judge Kearney) granted leave to amend the complaint without conditions (but without prejudice to the Barringers filing a motion for litigation expenses).

On September 30, 1999, the City filed its "FIRST AMENDED COMPLAINT IN EMINENT DOMAIN," alleging in part:

---

appeal, it does not matter, because the City has abandoned the remnant theory and seeks to acquire only the original Partial Take.

[6]The Barringers note their land is two contiguous parcels; the smaller parcel is 0.22 acre, the larger parcel is 8.71 acres. For ease of reference, we shall refer to the entire Barringer ownership as "parcel" in the singular.

"4. At a regular meeting of the City Council on June 23, 1998, by affirmative vote of two-thirds of the Council members, the City Council duly and regularly passed, approved and adopted Resolution No. 98-66, a resolution of necessity authorizing the City to commence and prosecute a condemnation action under its power of eminent domain to acquire the easements, right(s)-of-way and fee simple interests required for the Off-Site Improvement Project. Resolution No. 98-66 includes findings and determinations that the public interest and necessity require the Off-Site Improvement Project; that the Off-Site Improvement Project is planned or located in a manner that will be compatible with the greatest public good and the least private injury; that the easements, right(s)-of-way and fee simple interests to be acquired are necessary for the Off-Site Improvement Project . . . .

"5. On August 12, 1999 by affirmative vote of more than two-thirds of the Council members the City Council duly and regularly passed, approved and adopted Resolution No. 99-120, a resolution of necessity authorizing the City to amend its previously filed condemnation action SVC7377 to include a [sic] acquisition of the entire 8.9 acre Barringer ownership. Resolution No. and [sic] 99-120 includes findings and determinations that the public interest and necessity require the Off-Site Improvement Project [etc., same as previous paragraph]. Resolution No. 99-120 also makes the finding that the portion of the Barringer property remaining after the acquisition authorized under Resolution No. 98-66 is an 'uneconomic remnant' according to the terms of Section 1240.410 . . . and, as such, the City is authorized pursuant to Section 1240.410 to acquire the entire 8.9 acre Barringer property."

The first amended complaint also alleged, "The City is authorized by the provisions of . . . Section 1240.410 to acquire the entire 8.9 acre Barringer property as an uneconomic remnant."

The Barringers filed an answer to the first amended complaint, reiterating their previous objections to eminent domain and adding a new objection that the remainder was not a "remnant."

On November 23, 1999, the Barringers filed a motion for an award of more than $63,000 in statutory litigation expenses, including attorney's fees and costs, arguing the City's adoption of the second resolution of necessity (No. 99-120) should have had the same effect as if (1) the Barringers had prevailed on their claim that the City's adoption of the first resolution was an abuse of discretion under section 1245.255, subdivision (b), and (2) the City

had then rescinded its first resolution under section 1245.255, subdivision (c).[7]

Following a hearing, the trial court (Judge Kearney) granted the motion for litigation expenses and determined (1) the City had impliedly rescinded its first resolution, thereby triggering the penalties of section 1245.255, subdivision (c), and (2) the City had waived any challenge to the amount of the litigation expenses. The written order stated the statute did not require that the public entity abandon the intention to acquire the property before the court could award litigation expenses; the statute required only that the resolution of necessity be rescinded. The court found "the adoption of the new resolution of necessity as to the entire parcel impliedly rescinded the original resolution of necessity. This finding is further supported by [the City's] amendment of the sole cause of action of the complaint to seek condemnation of the entire parcel. Contrary to [the City's] assertion at oral argument, if the trial court determines that the new resolution of necessity is procedurally defective, [the City] will not be able to resurrect the originally

---

[7]Section 1245.255 provides:

"(a) A person having an interest in the property described in a resolution of necessity adopted by the governing body of the public entity pursuant to this article may obtain judicial review of the validity of the resolution:

"(1) Before the commencement of the eminent domain proceeding, by petition for a writ of mandate pursuant to Section 1085. The court having jurisdiction of the writ of mandate action, upon motion of any party, shall order the writ of mandate action dismissed without prejudice upon commencement of the eminent domain proceeding unless the court determines that dismissal will not be in the interest of justice.

"(2) After the commencement of the eminent domain proceeding, by objection to the right to take pursuant to this title.

"(b) A resolution of necessity does not have the effect prescribed in Section 1245.250 to the extent that its adoption or contents were influenced or affected by gross abuse of discretion by the governing body.

"(c) Nothing in this section precludes a public entity from rescinding a resolution of necessity and adopting a new resolution as to the same property subject, after the commencement of an eminent domain proceeding, to the same consequences as a conditional dismissal of the proceeding under Section 1260.120."

Section 1260.120 provides:

"(a) The court shall hear and determine all objections to the right to take.

"(b) If the court determines that the plaintiff has the right to acquire by eminent domain the property described in the complaint, the court shall so order.

"(c) If the court determines that the plaintiff does not have the right to acquire by eminent domain any property described in the complaint, it shall order either of the following:

"(1) Immediate dismissal of the proceeding as to that property.

"(2) Conditional dismissal of the proceeding as to that property unless such corrective and remedial action as the court may prescribe has been taken within the period prescribed by the court in the order. An order made under this paragraph may impose such limitations and conditions as the court determines to be just under the circumstances of the particular case including the requirement that the plaintiff pay to the defendant all or part of the reasonable litigation expenses necessarily incurred by the defendant because of the plaintiff's failure or omission which constituted the basis of the objection to the right to take."

pled cause of action and proceed on the original resolution of necessity." The trial court denied the City's request for reconsideration. The formal order awarding litigation expenses was filed on February 4, 2000.

In April 2000, the county clerk issued an abstract of judgment for the $63,000 litigation expenses order, based upon the Barringers' filing of a declaration invoking the "claim and deposit" provisions of section 708.710 et seq., seeking immediate payment of the award.

On June 23, 2000, the trial court (Judge Kearney) issued an OSC re contempt for the City to show cause why it should not be adjudged in contempt of court for willfully disobeying the court order for litigation expenses and refusing to comply with the claim and deposit procedures. The court denied the City's motion to vacate the OSC re contempt but stayed the order pending appeal.

In May 2000 the trial court (Judge Gaddis) conducted a bench trial of the Barringers' objections to the City's right to take their property, as authorized by section 1260.110 et seq. Several issues were eliminated through motions in limine. The issues that went to trial were:

1. Whether the Barringers received proper notice of the City's public hearing(s);

2. Whether the resolutions were invalid due to abuse of discretion by the City concerning findings of necessity required under section 1240.030;[8] and

3. Whether the Barringers' Remainder was a "remnant" under section 1240.410.

Following the bench trial, the court on May 24, 2000, issued a written "TENTATIVE STATEMENT OF DECISION" (later affirmed as the final statement of decision) to dismiss the action, concluding (1) the City did not abuse its discretion rendering the resolutions invalid, but (2) there was a defect in notice, and (3) the Remainder was not a "remnant." The decision stated in part: "The Court, based upon the evidence as presented, must find several errors by the City that are for the time being, fatal to the taking process. . . . [P]roper notice was not allowed the landowner to give him

---

[8]Section 1240.030 provides the power of eminent domain may be exercised "only if all of the following are established:

"(a) The public interest and necessity require the project.

"(b) The project is planned or located in the manner that will be most compatible with the greatest public good and the least private injury.

"(c) The property sought to be acquired is necessary for the project."

time to properly respond to the City's Resolution. The Court does find that the City in good faith, did inquire into and properly find that the three requirements under Section 1240.030 [(see fn. 8, *ante*)] had been met. But the lack of notice combined with the complete lack of evidence to support the 'remnant' finding must be termed an abuse of discretion and are for the time being, fatal to the City's request as stated in the First Amended Complaint in Eminent Domain." The trial court stated: "Although the [City] asserts that this [remnant] request is severable from the original request for the smaller portion of the property, the defense argues convincingly[] that the [City] is constrained by its pleadings as they stand." The trial court nevertheless suggested the parties try to work out purchase of the smaller Partial Take, because: "The procurement of that small piece [the Partial Take] certainly seems proper as in the public interest and if supported with proper information and resolution, it would appear that the City has the power to so acquire that piece of the Barringer property."

On July 20, 2000, the trial court issued an "ORDER OF DISMISSAL OF EMINENT DOMAIN PROCEEDING," stating that after trial on the Barringers' objections to the taking, the court was ordering that the eminent domain proceeding be dismissed and that the Barringers be awarded costs and litigation expenses.[9]

The City appeals from the dismissal order. The Barringers filed a protective cross-appeal from the trial court's determination that there was no abuse of discretion by the City rendering the resolution invalid.

DISCUSSION

I. *Eminent Domain Law and Standard of Review*

Section 1260.110 provides the trial court may specially set for trial any defense objections to the plaintiff's right to take the defendants' property. Section 1260.120 requires the objections to be heard and determined by the court, and further provides that if the court determines the plaintiff does not have the right to acquire by eminent domain, the court "shall order either of the following:

"(1) Immediate dismissal of the proceeding as to that property.

---

[9]Though not expressly stated in the order, it would appear the eminent domain proceeding was dismissed only as to the Barringers. The City indicates, without citation to the record, that there is a final order of condemnation transferring to the City the title of the other defendants' property, leaving only the Barringers' property unresolved.

The dismissal order is an appealable order. (§ 581d; *Van De Kamp v. Bank of America* (1988) 204 Cal.App.3d 819, 866-867 [251 Cal.Rptr. 530].)

"(2) Conditional dismissal of the proceeding as to that property unless such corrective and remedial action as the court may prescribe has been taken within the period prescribed by the court in the order." (See fn. 7, *ante*, at p. 1219.)

The exercise of the eminent domain power requires a finding of public necessity, which encompasses three elements: (1) public interest and necessity must require the project; (2) the project must be planned or located in the manner that will be the most compatible with the greatest public good and the least private injury; and (3) the property sought to be acquired must be necessary for the project. (§ 1240.030.)

"A public agency must hold a hearing to consider whether the taking meets these three criteria. (§ 1245.235; [citation].) The person whose property is to be acquired must be given notice and an opportunity to be heard. (§ 1245.235; [citation].) After the hearing, if the agency decides the taking meets the criteria, then it must adopt a resolution of necessity. (§§ 1240.040; 1245.220.) A resolution of necessity is a prerequisite to beginning a condemnation action. (§§ 1240.040, 1245.220.)

"Once a resolution of necessity is adopted, the resolution conclusively establishes the three criteria set forth under section 1240.030. (§ 1245.250.) However, a person having an interest in property described in a resolution of necessity may still obtain judicial review of the validity of the resolution. (§ 1245.255.) Review is available *before* the eminent domain action . . . [or] *after* the commencement of the eminent domain proceeding by objection to the right to take. (§ 1245.255; [citations].)

■ "A resolution of necessity will not have a conclusive effect as to the three criteria set forth under section 1240.030 'to the extent that its adoption or contents were influenced or affected by gross abuse of discretion by the governing body.' (§ 1245.255, subd. (b); [citation].) A gross abuse of discretion may be shown by a lack of substantial evidence supporting the resolution of necessity. [Citation.] It may also be shown where at the time of the agency hearing, the condemnor had irrevocably committed itself to the taking of the property regardless of the evidence presented. [Citation.]" (*Santa Cruz County Redevelopment Agency v. Izant* (1995) 37 Cal.App.4th 141, 148-149 [43 Cal.Rptr.2d 366], fns. omitted.)

The court's review of the validity of a resolution of necessity under section 1245.255 is limited to a review of the agency's proceedings. (*Santa Cruz County Redevelopment Agency v. Izant, supra*, 37 Cal.App.4th 141, 150.)

## II. *Review of Dismissal Order*

We shall first address the contentions regarding the dismissal order and shall conclude the dismissal must be reversed. We shall then address the City's contentions regarding interlocutory rulings, and finally the cross-appeal.

As indicated, the City on appeal does not challenge the trial court's rejection of the remnant theory. The City challenges only the trial court's determinations that (1) notice was defective, and (2) unconditional dismissal was appropriate due to abandonment of the Partial Take by the City. We shall conclude the trial court erred on both matters.

### A. *Notice*

The City contends the trial court erred in concluding notice of the public hearing(s)[10] was defective. We agree with the City.

On June 10, 1998, the City sent to the Barringers a letter offering to buy the property interests for the Off-Site Improvement Project and a copy of the two-and-a-half-page resolution No. 98-56 (adopted June 9, 1998) "APPROVING AN OFFER [for the property interests] . . . AND PROVIDING NOTICE OF THE CITY'S INTENT TO ADOPT A RESOLUTION OF NECESSITY AUTHORIZING THE CITY TO COMMENCE AND PROSECUTE A CONDEMNATION ACTION TO ACQUIRE THE PROPERTY INTERESTS" in the event the offer was not accepted. Resolution No. 98-56 stated affected property owners "are hereby advised that they have the right to appear and be heard on the matters referred to in . . . Section 1240.030, provided they file with the City Clerk a written request to appear and be heard within 10 days of the mailing of this resolution. . . . [¶] . . . By this resolution, all persons and entities who hold an interest in the affected properties and to [*sic*] any other person or entity claiming an interest in the Property Interests and every other person or entity claiming an interest in the Property Interests are advised that if within 10 days after mailing of this resolution, they have not filed with the City a written request to be heard on June 23, 1998, such failure to file will result in a waiver of the right to appear and to be heard."

The City's June 10, 1998, communication was sent by courier and by registered mail. The registered mail receipt is signed by Carol Barringer and

---

[10]The City focuses on the June 23, 1998, public hearing. The Barringers add mention of the August 12, 1999, public hearing at which resolution No. 99-120 was adopted, asserting they received only 14 days' notice, rather than the 15 days' notice assertedly required by statute. Our conclusion that the statute does not mandate 15 days' notice disposes of the matter as to both hearings.

dated June 12, 1998. Donald Barringer testified he saw these papers, probably sometime around June 10, 1998.

Additionally, Donald Barringer was present at the June 9, 1998, meeting of the city council, at which the city council (1) adopted resolution No. 98-56, and (2) announced an intent to consider adopting a resolution of necessity to condemn the property interests at the next regularly scheduled meeting on June 23, 1998, in the event the offers were not accepted.

Thus, the Barringers had actual notice of the June 23, 1998, hearing 14 days before the hearing and written notice 11 days before the hearing.[11] These times furnished the Barringers with reasonable notice of the June 23, 1998, hearing.

The Barringers did not request to appear and be heard concerning adoption of resolution No. 98-66 and did not attend the June 23, 1998, hearing because they believed it would be futile (as reflected in a declaration and testimony of Donald Barringer, discussed *post*).

The trial court agreed with the Barringers that 11 days' written notice was inadequate and the resolution was therefore invalid, because a minimum of 15 days' notice was required by section 1245.235. We disagree.

Section 1245.235 provides:

"(a) The governing body of the public entity may adopt a resolution of necessity only after the governing body has given each person whose property is to be acquired by eminent domain and whose name and address appears on the last equalized county assessment roll notice and a reasonable opportunity to appear and be heard on the matters referred to in Section 1240.030 [requirements for exercise of eminent domain power].

"(b) The notice required by subdivision (a) shall be sent by first-class mail to each person described in subdivision (a) and shall state all of the following:

"(1) The intent of the governing body to adopt the resolution.

"(2) The right of such person to appear and be heard on the matters referred to in Section 1240.030.

---

[11]The City suggests there was 12 days' notice because of hand delivery by courier on June 11, 1998. However, the citation to the record merely shows a City employee declared she "arranged for a copy of the letter to be delivered to the Barringers by courier." This declaration does not reflect that the courier accomplished delivery on June 11.

"(3) *Failure to file a written request to appear and be heard within 15 days after the notice was mailed will result in waiver of the right to appear and be heard.*

"(c) The governing body . . . shall hold a hearing at which all persons described in subdivision (a) who filed a written request within the time specified in the notice[12] may appear and be heard . . . . The governing body need not give an opportunity to appear and be heard to any person who fails to so file a written request within the time specified in the notice. . . .

"(d) *Notwithstanding subdivision (b), the governing body may satisfy the requirements of this section through any other procedure that has given each person described in subdivision (a) reasonable written personal notice and a reasonable opportunity to appear and be heard on the matters referred to in Section 1240.030.*" (Italics added.)

The Barringers contend section 1245.235, subdivision (b), mandates that property owners are entitled to a minimum of 15 days before adoption of a resolution of necessity affecting their property. However, this argument is refuted by subdivision (d) of the same statute, which provides "Notwithstanding subdivision (b), the governing body may satisfy the requirements of this section through any other procedure that has given each person described in subdivision (a) reasonable written personal notice and a reasonable opportunity to appear and be heard on the matters referred to in Section 1240.030."

The Barringers interpret subdivision (d) of section 1245.235 as merely granting the public entity some latitude in giving notice as long as the alternative procedure meets the minimum requirements (15 days) of subdivision (b). However, such an interpretation would render subdivision (d) superfluous unless one were to reach the odd conclusion that, absent subdivision (d), the public entity was not allowed to give more than 15 days' notice. Moreover, the Barringers' interpretation ignores subdivision (d)'s phrase "[n]otwithstanding subdivision (b)" (italics added), which refers to all the provisions of subdivision (b) in their entirety.

The Barringers argue their position is supported by a 1975 Senate Legislative Committee comment (quoted in West's Annotated Codes), which states: "Subdivision (a) makes clear that the hearing must precede adoption of the resolution of necessity. However, under subdivision (d), this requirement may be satisfied by any adequate procedure followed by the public

---

[12]The language "within the time specified in the notice" was added in 1986. (Stats. 1986, ch. 358, § 1, p. 1523.) Before 1986, the statute said "within 15 days after the notice prescribed in subdivision (b) was mailed." (Stats. 1975, ch. 1275, § 2, p. 3424.)

entity, for example, through hearings under a local improvement act. Moreover, subdivision (d) permits the public entity to combine the *required notice* and hearing with other administrative procedures, for example, those relating to relocation assistance or to environmental impact reports." (Legis. Com. com., Sen. 1975 Addition, 19 West's Ann. Code Civ. Proc. (1982 ed.) foll. § 1245.235, pp. 583-584, italics added.) The Barringers argue the reference to "required notice" suggests the public entity is given latitude only with respect to "how" to give notice. We disagree.

The Barringers also cite a treatise opining that section 1245.235, subdivision (b)(3), suggests notice must be given more than 15 days before the hearing. (Rypinski, Eminent Domain (1998) p. 76.) The quotation provided by the Barringers says nothing about subdivision (d).

The Barringers argue (as they did in their trial brief) that section 1245.235's reference to 15 days' notice "is mandatory to ensure due process is adhered to." However, the Barringers have not cited any authority or developed any due process analysis. A case cited by the Barringers for a different proposition (that dismissal is the proper remedy for a resolution invalidated by lack of notice) reflects the need for development of a due process analysis and the insufficiency of mere invocation of the words "due process." Thus, *Conejo Recreation & Park Dist. v. Armstrong* (1981) 114 Cal.App.3d 1016 [170 Cal.Rptr. 891], held the recreation district deprived the defendants of procedural due process by failing to give notice of its intention to appear before the board of supervisors to seek permission to condemn the defendants' property (a Public Resources Code statute required the recreation district to obtain approval of the supervising authority before the district could exercise the right of eminent domain). (*Id.* at pp. 1020-1023.) ██ However, the appellate court specified its due process analysis depended upon its conclusion that the governmental decision at issue was *adjudicative* rather than *legislative*, because only adjudicative decisions are subject to procedural due process. (*Id.* at p. 1022, fn. 3.) ██ Here, the Barringers have failed to develop any argument or cite any authority that this case involves adjudicative rather than legislative decisions. ██ To the contrary, it has been held that adoption of a resolution of necessity is a legislative act. (*Santa Cruz County Redevelopment Agency v. Izant, supra*, 37 Cal.App.4th 141, 150; see also *Rindge Co. v. Los Angeles County* (1923) 262 U.S. 700, 709 [43 S.Ct. 689, 693, 67 L.Ed. 1186] [resolution of necessity for eminent domain is legislative question, and " 'hearing thereon is not essential to due process in the sense of the Fourteenth Amendment' "].)

██ Accordingly, we reject the Barringers' invocation of "due process."

We conclude the City was not required to give 15 days' notice of the public hearing if it utilized another procedure that gave the Barringers

reasonable written personal notice and a reasonable opportunity to appear and be heard on the matters referred to in section 1240.030. The procedure actually used by the City afforded the Barringers such reasonable notice.

Thus, the Barringers do not dispute that they knew in advance of the June 23, 1998, hearing at which the city council adopted resolution No. 98-66, and they do not argue or demonstrate that they lacked sufficient time to appear and be heard. Rather, they admit they chose not to attend the public hearing because of their own belief that it would be futile because the decision was already a "done deal."

The Barringers argue that, since their appearance at the hearing would supposedly be futile, they did not have a "reasonable opportunity" to appear and be heard, as required by subdivision (d) of section 1245.235 (section 1245.235(d)). However, "reasonable opportunity" refers to the procedure of notice and hearing. The statute allows the City to satisfy the notice and hearing requirements through any "procedure" that affords a reasonable opportunity to appear and be heard. (§ 1245.235(d).) Thus, in order to establish a violation of section 1245.235(d), the defect would have to be in the procedure of notice and hearing. As reflected in Donald Barringer's declaration, the Barringers' futility argument did not go to the notice and hearing procedure, and thus the Barringers' asserted belief that it would be futile to attend the hearing did not establish a violation of section 1245.235(d).

Thus, Donald Barringer (hereafter Barringer) submitted to the trial court a declaration attesting as follows:

Sometime before the June 9, 1998, city council meeting, Barringer met with Jeff Jones, a representative of project developer Del Webb, who said the Lincoln Crossing defendants were not cooperating and therefore the City had to take both the Lincoln Crossing defendants' property and the Barringers' property. Barringer said Jones said "the City had already committed to Del Webb to take Lincoln Crossings and my property by eminent domain. He [Jones] said that there was nothing we could do about it."

Barringer attended the city council meeting on June 9, 1998 (he assertedly learned of the meeting only two hours before it began). "When the issue of my property arose I raised my hand to speak to the council and object to the take. However, the chairman of the City Council told me that no public comment would be taken on this issue as the council members were unfamiliar with this issue and unprepared to rule on it."

Barringer further attested: "On June 23, 1998 the City council convened concerning adopting the resolution of necessity. We did not attend as we felt

it would be a futile act. We felt it was futile because I was not allowed to speak at the previous meeting. It was obvious to me it was a 'done deal' anyway, and the City council clearly did not understand what was going on with our property. I felt it was a 'done deal' as everything Mr. Jones said was turning out to be true. Lincoln Crossings was the one who hired the engineering firm to design the off-site improvements (Sterling Parkway) as they were mostly on their property. They even had their attorney, Mr. [Dennis] Viglione, tell the City council on June 9, 1998 all of the legal reasons why they could not go forward. However, the City basically ignored him. Moreover, a couple of days after the June 9, 1998 meeting I met with Mr. Campbell, council members Sprague and Cosgrove, Jeff Jones and a representative from Lincoln Crossing. We discussed trying to resolve this matter, but I left the meeting with the knowledge that it was already a done deal. On June 23, 1998 I did not attend because if the City would not listen to Mr. Viglione's legal arguments they certainly would not listen to my layman's objections. Mr. Viglione did attend[] the June 23, 1998 meeting, and as it turned out it did not matter as he articulated the objections and the City council voted him down anyway."

Barringer further attested he would have objected had he been given a reasonable and "meaningful" opportunity to do so.

This declaration does not provide any basis for invalidating the resolution of necessity. A landowner who objects to a taking must exhaust remedies by appearing and making his objection at the appropriate stage, here the public hearing on June 23, 1998. A landowner cannot excuse his failure to do so by unilaterally deciding it would be futile. The Barringers cite no legal authority on the question of futility.

We conclude notice was adequate.

Under the heading "Section 1245.235(b)(3) Requires That Fifteen (15) Days Notice Shall Be Given," the Barringers also present a different argument, i.e., that section 1245.235 contemplates an opportunity to be heard on matters referred to in section 1240.030 (eminent domain power can be exercised only upon findings that the public interest and necessity require the project, the planning is compatible with the greatest public good and the least private injury, and the property is necessary for the project), and these matters were not even discussed at the June 23, 1998, public hearing. The Barringers claim they were discussed only in closed session of the city council.

██ This point, which has nothing to do with the 15 days' notice issue, is waived by failure to brief it properly under a separate heading. (Cal. Rules of

Court, rule 14(a)(1)(B); *Heavenly Valley v. El Dorado County Bd. of Equalization* (2000) 84 Cal.App.4th 1323, 1346 [101 Cal.Rptr.2d 591]; *Live Oak Publishing Co. v. Cohagan* (1991) 234 Cal.App.3d 1277, 1291 [286 Cal.Rptr. 198].)

█ We conclude the trial court erred in finding notice of the June 23, 1998, public hearing was defective.

## B. *No Abandonment of Partial Take*

█ The City argues the trial court improperly concluded the City had abandoned the initial condemnation action for the Partial Take. As a consequence of this conclusion, the trial court, upon rejecting the City's remnant theory, concluded the City's entire eminent domain action failed, and the City could not acquire even the Partial Take. We shall conclude the City did not abandon its claim for the Partial Take.

When the trial court granted the Barringers' pretrial motion for litigation expenses (in response to the City's filing of the amended complaint), the court found "the adoption of the new resolution of necessity as to the entire parcel impliedly rescinded the original resolution of necessity. This finding is further supported by [the City's] amendment of the sole cause of action of the complaint to seek condemnation of the entire parcel. Contrary to [the City's] assertion at oral argument, if the trial court determines that the new resolution of necessity is procedurally defective, [the City] will not be able to resurrect the originally pled cause of action and proceed on the original resolution of necessity."

When the trial court later issued its statement of decision after trial, it said "[t]he prayer of the First Amended Complaint is that the easement, rights of way and fee simple described herein be condemned to the City's use for the off site improvement plan. The requests described ask for the entire 8.9 acres owned by [the Barringers]. Although the plaintiff asserts that this request is severable from the original request for the smaller portion of the property, the defense argues convincingly, that the plaintiff is constrained by its pleadings as they stand."

We disagree with the trial court. Although resolution No. 99-120 and the first amended complaint did refer to the entire Barringer parcel as necessary for the Off-Site Improvement Project, both documents also specified there

was a Partial Take pursuant to the 1998 resolution and a Remainder, and the Remainder was being sought as a remnant.[13]

Thus, resolution No. 99-120 stated in part:

"WHEREAS, the City Council, on June 23, 1998, adopted a Resolution of Necessity (Resolution No. 98-66) authorizing the City to commence and prosecute a condemnation action under its power of eminent domain to acquire [property interests from the Barringers and others] needed for the Off-Site Improvement Project; and

"WHEREAS, by Complaint in Eminent Domain filed in Placer County Superior Court on June 25, 1998, . . . the City commenced a condemnation action to acquire such easements, right(s)-of-way and fee simple interests; and

"WHEREAS, the City has settled this condemnation action as to all property owners and other parties except [the Barringers], the owners of approximately 8.9 acres . . . ; and

"WHEREAS, by its pending condemnation action, the City seeks to acquire from the Barringer Ownership a fee interest in 0.236 acre . . . , a permanent road easement over 0.032 acre . . . , a nonexclusive public utility easement over 0.508 acre . . . , and a three-year construction easement over 0.605 acre . . . ; and

"WHEREAS, during the prosecution of the condemnation action, the City has determined that the remainder of the Barringer Ownership (after the acquisitions described in [exhibits to] Resolution No. 98-66) ('Remainder Parcel') will be left in such size, shape and condition as to be of little market value; and

"WHEREAS, the Remainder Parcel therefore will be an 'uneconomic remnant' as that term is used in . . . section 1240.410 . . . ; and [¶] . . . [¶]

"NOW, THEREFORE, BE IT FOUND AND DETERMINED as follows: [¶] . . . [¶]

---

[13]We note the Partial Take was not totally to be a taking in fee simple interest. Part of the acreage in the Partial Take was to be taken as lesser property interests, e.g., a permanent nonexclusive public utility easement. Obviously, the taking contemplated by the amended complaint was a fee simple interest in the entire Barringer acreage. Thus, the Remainder that was being sought as a remnant obviously included not only the acreage outside the physical boundaries of the Partial Take, but also the remaining bundle of property rights in the Partial Take acreage that were not the subject of the initial condemnation action.

"3. The taking of the easements, right(s)-of-way and fee simple interests described in [exhibits to] Resolution No. 98-66 has left the remainder of the Barringer Ownership in such size, shape and condition to be of little market value and therefore has created an 'uneconomic remnant' under Sec. 1240.410;

"4. The entire Barringer Ownership . . . therefore is necessary for the Off-Site Improvement Project and the Revised Twelve Bridge Specific Plan Project; [¶] . . . [¶]

"NOW, THEREFORE, BE IT RESOLVED that [the City's special counsel] is hereby authorized to prepare and file the papers necessary to amend and continue to prosecute the condemnation action pending in Placer County Superior Court (or initiate a new condemnation action [at counsel's discretion]) for the purpose of effectuating the acquisition by the City under its power of eminent domain of the Barringer Ownership . . . ."

The first amended complaint similarly made specific reference to the 1998 resolution and specified part of the property was a Remainder being sought as a remnant under section 1240.410. Thus, the first amended complaint alleged in part:

"4. At a regular meeting of the City Council on June 23, 1998, . . . the City Council duly and regularly passed, approved and adopted Resolution No. 98-66, a resolution of necessity authorizing the City to commence and prosecute a condemnation action under its power of eminent domain to acquire the easements, right(s)-of-way and fee simple interests required for the Off-Site Improvement Project. . . .

"5. On August 12, 1999, by affirmative vote of more than two-thirds of the Council members the City Council duly and regularly passed, approved and adopted Resolution No. 99-120, a resolution of necessity authorizing the City to amend its previously-filed condemnation action SVC7377 to include a [sic] acquisition of the entire 8.9 acre Barringer ownership. Resolution No. and [sic] 99-120 includes findings and determination that the public interest and necessity require the Off-Site Improvement Project [etc.]. Resolution No. 99-120 also makes the finding that the portion of the Barringer property remaining after the acquisition authorized under Resolution No. 98-66 is an 'uneconomic remnant' according to the terms of Section 1240.410 . . . , and, as such, the City is authorized pursuant to Section 1240.410 to acquire the entire 8.9 acre Barringer property."

The first amended complaint attached as exhibits copies of resolution No. 98-66 and resolution No. 99-120.

We agree with the City that, even though the trial court held the Barringers' Remainder did not constitute a "remnant" under section 1240.410 (a ruling unchallenged on appeal), the City's amended complaint still described, included, and requested condemnation of the Partial Take described in resolution No. 98-66.

We also agree with the City that the trial court erred in concluding the City implicitly rescinded resolution No. 98-66.

Thus, adoption of a resolution of necessity is a legislative act. (*Santa Cruz County Redevelopment Agency v. Izant, supra,* 37 Cal.App.4th 141, 150.) Repeal of legislative acts by implication is disfavored, and all presumptions are against a repeal by implication. (*Lesher Communications, Inc. v. City of Walnut Creek* (1990) 52 Cal.3d 531, 540-541 [277 Cal.Rptr. 1, 802 P.2d 317].) Where there are two legislative enactments on the same subject, they will, if reasonably possible, be construed so as to maintain the integrity of both. (*Hammond v. McDonald* (1939) 32 Cal.App.2d 187, 192 [89 P.2d 407].)

Here, the City clearly intended to maintain the integrity of both Resolutions. The original resolution said the City wanted to acquire the Partial Take. The second resolution said the City wanted to acquire the Partial Take plus the Remainder. The second resolution expressly incorporated by reference the first resolution and indeed depended upon it, because without the Partial Take there could be no remnant issue.

The Barringers on appeal present no response to the principle that repeals by implication are disfavored. Instead, they argue (1) the amended complaint referred to the first resolution only because the City did not want to conduct a "necessity" hearing at the time it adopted the second resolution; (2) the City did not have necessity for the entire parcel and needed the first resolution to create their remnant argument; and (3) while the original complaint sought only a Partial Take, the amended complaint sought the entire parcel, and "[o]bviously, they cannot take the same property more than once." None of these points supports a conclusion that the City impliedly rescinded the first resolution or abandoned its claim to the Partial Take.

The Barringers also argue that if the City wanted to allege these "takes" in the alternative the City was free to do so, but the City "elected" not to allege the "takes" in the alternative. They cite a treatise for the proposition that once filed, an amended pleading making substantial changes supercedes the original. They argue a review of the amended complaint and its prayer for

relief shows the City sought the entire Barringers' parcel and a partial take of properties of the other defendants *other than the Barringers*. However, the Barringers fail to specify anything in the amended complaint supporting their position. Our extensive quotation from the amended complaint *ante*, shows the City sought the Partial Take of the Barringers' property plus the Remainder of the Barringers' property as a remnant. Nothing in the amended complaint suggested that the City was abandoning its Partial Take claim in the event its remnant theory failed.

The Barringers suggest an election by the City is shown because the City was "warned" by the trial court's order awarding pretrial litigation expenses to the Barringers, in which the court stated "Contrary to [the City's] assertion at oral argument, if the trial court determines that the new resolution of necessity is procedurally defective, [the City] will not be able to resurrect the originally pled cause of action and proceed on the original resolution of necessity." However, in this appeal (as set forth *post*) we will reverse that order, which was premised on the trial court's erroneous conclusion that the City had impliedly rescinded resolution No. 98-66. Moreover, the concept of a "warn[ing]" suggests the City could have done something in response to the warning in order to preserve its rights. Yet the court's conclusion that the City had impliedly rescinded resolution No. 98-66 would preclude the City from "elect[ing]" to rely on that resolution. Thus, the Barringers' point is without merit.

We conclude the trial court erred in finding the City impliedly rescinded resolution No. 98-66 and abandoned its claim for the Partial Take.

### C. *Conditional Versus Unconditional Dismissal*

The City argues the trial court abused its discretion by entering an unconditional dismissal rather than a conditional dismissal under section 1260.120 to allow the City to proceed with eminent domain as to the Partial Take only. We agree the trial court abused its discretion.

An appellate court will disturb a discretionary trial court ruling only upon a showing of clear abuse of discretion and a miscarriage of justice. (*Blank v. Kirwan* (1985) 39 Cal.3d 311, 331 [216 Cal.Rptr. 718, 703 P.2d 58].)

Section 1260.120 provides that, upon a bench trial of the defendant's objections to the right to take property under eminent domain, if the court determines the plaintiff does not have the right to acquire by eminent domain, the court "shall order either of the following:

"(1) Immediate dismissal of the proceeding as to that property.

"(2) Conditional dismissal of the proceeding as to that property unless such corrective and remedial action as the court may prescribe has been taken within the period prescribed by the court in the order. . . ."

The City argues the trial court should have (1) conditionally dismissed and allowed the City to give the Barringers 15 days' notice of a new public hearing to readopt resolution No. 98-66, and (2) allowed the City to amend its complaint to refer only to the Partial Take.

We have already concluded there was no fatal defect in notice, hence there is no reason for any dismissal based on defect in notice.

With respect to the severability of the Partial Take, it seems clear to us that the claim for the fee simple interest of the entire Barringer ownership was severable from the claim for the easement/right-of-way/fee simple interests (the Partial Take) described in resolution No. 98-66, and upon the trial court's rejection of the remnant theory, we see no reason why the City could not be allowed to proceed with eminent domain as to the Partial Take only. Indeed, the trial court observed in its statement of decision that the City could still acquire the Partial Take if it followed proper procedures. Since the claims were severable, the trial court abused its discretion in entering an unconditional dismissal.

The Barringers argue a conditional dismissal is appropriate *only* where the complaint alleges alternative grounds for condemnation, because the Law Revision Commission comment to section 1260.120 (quoted in West's Annotated Codes) said: "A determination that the plaintiff has no right to condemn the defendant's property ordinarily requires an order of dismissal. Paragraph (1) of subdivision (c). However, where the complaint alleges alternative grounds for condemnation, a finding which would require dismissal as to one ground does not preclude a finding of right to take on another ground, and the proceeding may continue to be prosecuted on that basis." (Cal. Law Revision Com. com., Sen. 1975 Addition, 19 West's Ann. Code Civ. Proc., *supra*, foll. § 1260.120, pp. 743-744.)

However, this comment does not state dismissal is *only* appropriate where the complaint alleges alternative grounds. In any event, the amended complaint in this case did allege alternative grounds: (1) necessity for the Partial Take, and (2) remnant theory for the Remainder. The Barringers assert the City sought their entire property on one ground—the remnant theory. However, it is evident from resolution No. 99-120 and the amended complaint

that the remnant theory applied only to the Remainder, not to the original Partial Take.

The Barringers argue the amended complaint sought a fee simple interest in the entire Barringer parcel, whereas the original complaint sought lesser property interests—easements, rights-of-way, and fee interests—and this court should reject the City's argument that the amended complaint should be read as seeking the fee interest of resolution No. 99-120 and *in the alternative* the easement/right-of-way/fee simple interests described in resolution No. 98-66. It appears the Barringers view the original Partial Take as the taking of less-than-fee interests, and the amended Partial Take as a taking of a fee simple interest. However, in both the original and amended complaint, the Partial Take was a taking of less-than-fee interests. This is evident from the fact the 1999 resolution and the amended complaint referred to the 1998 resolution for the description of interests involved in the Partial Take. Insofar as the Partial Take was to take less-than-fee interests (e.g., easements) with respect to some portions of the Partial Take acreage, the remaining property interests in those portions of the Partial Take acreage, which would have remained with the Barringers, became part of the Remainder sought by the City in the 1999 resolution and the amended complaint.

Thus, the claim for the fee simple interest of the entire Barringer ownership was severable from the claim for the easement/right-of-way/fee simple interests described in resolution No. 98-66.

We conclude unconditional dismissal of the eminent domain proceeding was improper.

The City asks this court to direct the trial court to enter an order of *conditional dismissal*, allowing the City to amend its complaint to refer to the Partial Take only. We shall grant the City's request.

III. *Review of Interlocutory Rulings*

A. *Litigation Expenses*

The City contends the trial court improperly awarded litigation expenses to the Barringers in response to the City's filing of the amended complaint. We agree with the City.

After the City filed its amended complaint and *before* the bench trial on the Barringers' objections to the City's right to acquire their property, the Barringers filed a motion for an award of litigation expenses under section

1260.120, subdivision (c)(2) (section 1260.120(c)(2)), and section 1245.255, subdivision (c) (section 1245.255(c)).

Section 1260.120 provides that upon a bench trial of defense objections to the plaintiff's right to take property, if the court determines the plaintiff does not have the right to acquire by eminent domain, the court shall order either immediate dismissal or "[c]onditional dismissal of the proceeding as to that property unless such corrective and remedial action as the court may pre-scribe has been taken within the period prescribed by the court in the order. An order made under this paragraph [conditional dismissal] may impose such limitations and conditions as the court determines to be just under the circumstances of the particular case including the requirement that the plaintiff pay to the defendant all or part of the reasonable litigation expenses necessarily incurred by the defendant because of the plaintiff's failure or omission which constituted the basis of the objection to the right to take." (§ 1260.120(c)(2).)

Section 1245.255(c) provides: "Nothing in this section [judicial review of validity of resolution] precludes a public entity from rescinding a resolution of necessity and adopting a new resolution as to the same project subject, after the commencement of an eminent domain proceeding, to the same consequences as a conditional dismissal of the proceeding under Section 1260.120."

The Barringers' motion argued the City's adoption of the second resolu-tion should have the same effect as a conditional dismissal under section 1260.120, as if (1) the Barringers had prevailed on their abuse of discretion challenge to the City's adoption of the first resolution under section 1245.255, subdivision (b);[14] and (2) the City had rescinded its first resolu-tion under section 1245.255(c).

Over the City's opposition, the trial court (Judge Kearney) granted the motion, concluding the City had impliedly rescinded its first resolution, thereby triggering the penalties of section 1245.255(c). The court's order stated the current version of section 1245.255(c) "does not require that the public entity abandon the intention to acquire the property before the court can award attorney fees and costs. [Section] 1245.[2]55(c) only requires that the resolution of necessity be rescinded. The court finds that the adoption of the new resolution of necessity as to the entire parcel impliedly rescinded the original resolution of necessity. This finding is further supported by [the

---

[14]Section 1245.255, subdivision (b), provides: "A resolution of necessity does not have the effect prescribed in Section 1245.250 [conclusive effect] to the extent that its adoption or contents were influenced or affected by gross abuse of discretion by the governing body."

City's] amendment of the sole cause of action of the complaint to seek condemnation of the entire parcel. Contrary to [the City's] assertion at oral argument, if the trial court determines that the new resolution of necessity is procedurally defective, [the City] will not be able to resurrect the originally pled cause of action and proceed on the original resolution of necessity." The trial court also stated the City had not objected to the amount of expenses claimed by the Barringers and had therefore waived any such objection, and the amount sought was reasonable.

We have explained the trial court erred in concluding the City impliedly rescinded the 1998 resolution. Consequently, litigation expenses incurred by the Barringers before amendment of the complaint were not "rendered moot" by the amendment, as urged by the Barringers. Accordingly, the award of litigation expenses, which was premised upon the trial court's erroneous finding of implied rescission of the 1998 resolution, was erroneous.

The Barringers argue that even if the trial court erred in granting the motion for litigation expenses, under the harmless error doctrine reversal would be appropriate only if there was a miscarriage of justice and it is reasonably probable a result more favorable to the appealing party would have been obtained in the absence of the error. The Barringers argue any error by the trial court was harmless because the trial court could have granted the motion for litigation expenses under alternative statutes.

We do not have to decide whether the Barringers were entitled to litigation expenses at the time they made their motion in the trial court. Now, in this court, the City affirmatively requests that we should direct the trial court to enter an order of conditional dismissal of the Remainder Take, so as to allow the Partial Take to proceed. We shall direct the trial court to order such a conditional dismissal.

As we have noted, section 1260.120(c)(2), which authorizes conditional dismissals, provides that the trial court "may impose such limitations and conditions as the court determines to be just under the circumstances of the particular case including the requirement that the plaintiff pay to the defendant all or part of the reasonable litigation expenses necessarily incurred by the defendant because of the plaintiff's failure or omission which constituted the basis of the objection to the right to take." (See fn. 7, *ante*, at p. 1219.)

Here, the Barringers objected to the City's right to take the Remainder, Parcel, and incurred litigation expenses in doing so, and the City has agreed to the dismissal of its take of the Remainder Parcel. The Barringers are entitled to their reasonable litigation expenses in defending against the

taking of the Remainder Parcel (§ 1268.610, subd. (a)(1)), and an order awarding the Barringers such expenses shall be included in the order of conditional dismissal.[15] At oral argument in this court, counsel for the City conceded this is not unfair.

In sum, the original order awarding the Barringers litigation expenses was erroneous and invalid, but, upon remand, the trial court shall enter a new order, as a part of its conditional order of dismissal, awarding the Barringers their reasonable litigation expenses as described above.

### B. Claim and Deposit Procedures

The City argues the trial court improperly applied the claim and deposit statutes (§ 708.710 et seq.) to require immediate payment of the litigation expenses award, and therefore the court erred in issuing the OSC re contempt when the City did not immediately deposit money claimed by the Barringers in connection with the trial court's grant of the Barringers' motion for litigation expenses.

Since we are reversing the existing award of litigation expenses, the question of applicability of the claim and deposit statutes is moot.

However, because the order violated was the order to pay litigation expenses, and because we have found that order invalid, the City may not be held in contempt for violating that invalid order. (*In re Misener* (1985) 38 Cal.3d 543, 558 [213 Cal.Rptr. 569, 698 P.2d 637].) The trial court shall dismiss its OSC re contempt against the City.

In conclusion, with respect to the main appeal, we reverse the order dismissing the eminent domain action as to the Barringers; reverse the order awarding litigation expenses to the Barringers; and direct dismissal of the OSC re contempt served on the City.

We order the trial court to dismiss conditionally the eminent domain action, so as to delete from the action the taking of the Remainder Parcel, and to award the Barringers their reasonable litigation expenses as described in the opinion.

We now turn to the Barringers' protective cross-appeal.

---

[15]Section 1268.610, subdivision (d) provides: "(d) Litigation expenses under this section shall be claimed in and by a cost bill to be prepared, served, filed, and taxed as in a civil action. If the proceeding is dismissed upon motion of the plaintiff, the cost bill shall be filed within 30 days after notice of entry of judgment."

IV. *The Cross-appeal*

 The Barringers filed a protective cross-appeal, challenging the trial court's determination that there was no gross abuse of discretion by the City which would invalidate the two resolutions (Nos. 98-66 and 99-120). We shall conclude the Barringers fail to show any merit to their cross-appeal.

The Barringers maintain the City grossly abused its discretion because there was a lack of substantial evidence in support of the resolutions. However, the Barringers in this portion of their brief fail to provide any citations to the record to support any of the assertions as to what the record shows on this point, as required by California Rules of Court, former rule 15 ("The statement of any matter in the record shall be supported by appropriate reference to the record"; see now rule 14). We therefore need not consider the matter. (*Kim v. Sumitomo Bank* (1993) 17 Cal.App.4th 974, 979 [21 Cal.Rptr.2d 834] [reviewing court may disregard contentions unsupported by citation to the record]; *Aguimatang v. California State Lottery* (1991) 234 Cal.App.3d 769, 796 [286 Cal.Rptr. 57] [reviewing court may disregard evidentiary contentions unsupported by proper page cites to the record].)[16]

The Barringers next argue the City grossly abused its discretion, as the public hearing was a sham and/or the City had already irrevocably committed itself to take the property. Again, however, the Barringers fail to provide citations to the record in this portion of their brief, to support their factual assertions, e.g., about what the witness testimony showed. We therefore need not consider the matter. (*Kim v. Sumitomo Bank, supra*, 17 Cal.App.4th 974, 979; *Aguimatang v. California State Lottery, supra*, 234 Cal.App.3d 769, 796.)

The only citation to the record provided by the Barringers is to paragraph 4.5.5 of the development agreement between the City and Del Webb which

---

[16]The Barringers' petition for rehearing argues, among other things, that this court incorrectly rejected their cross-appeal on the procedural ground of failure to cite to the record, as required by former rule 15, California Rules of Court. (Further references to rules are to the California Rules of Court.) The Barringers argue that, although the "Argument" portion of their brief lacked record citations, they satisfied the rule by providing a "Factual Background," with record citations, at the beginning of their brief. The Barringers' position, for which they cite no authority, is inconsistent with former rule 15 and current rule 14, both of which require a record citation for each reference.

Thus, rule 14 says "Each brief must: [¶] . . . [¶] . . . support *any* reference to a matter in the record by a citation to the record." (Italics added.)

Accordingly, *any* reference in the brief must be supported by a citation, regardless of where in the brief that reference appears. This is consistent with former rule 15, which required a record citation for "[t]he statement of *any* matter in the record." (Italics added.) Moreover, it is the only construction consistent with the purpose of the citation requirement, which is to enable appellate justices and staff attorneys to locate relevant portions of the record expeditiously without thumbing through and rereading earlier portions of a brief.

The Barringers' argument is not well taken.

(according to the Barringers) shows the City irrevocably committed itself to take whatever off-site property *Del Webb* felt was necessary. However, the cited contract clause did not say *who* would decide what property was necessary. Rather, the contract clause merely stated: "To the extent that the acquisition of off-site right(s)-of-way are necessary for Webb to construct off-site improvements including, but not limited to, roadways [etc.], City shall, within thirty (30) days of written request by Webb, negotiate with the owner of such off-site land to acquire the right(s)-of-way in question. In the event such negotiations fail . . . , City shall immediately exercise its power of eminent domain . . . ."

The Barringers also cite a later, unrelated contract which assertedly shows the City "has gotten smarter" and modified the type of contractual language it uses after the contract which is the subject of this litigation. This does nothing to help the Barringers in this appeal.

We conclude the Barringers fail to show the public hearing was a sham or the City had irrevocably committed itself to take the property.

The Barringers next argue that since the resolutions should have been found invalid due to abuse of discretion, the City could not rely on the statutory presumption (§ 1245.250) that the required elements of necessity (§ 1240.030) are met, and the burden shifted to the City to prove the elements of necessity, and the City failed to do so. Since the Barringers have failed to show any grounds for reversal in the trial court's determination that the City did not abuse its discretion in adopting the resolutions, we need not consider the Barringers' contentions on this point.

Finally, the Barringers' cross-appeal challenges an interlocutory ruling granting the City summary adjudication on the sufficiency of resolution No. 98-66's legal descriptions of the property to be taken. The Barringers in this portion of their brief fail to provide any citation to the record to locate the challenged order or the moving and opposing papers upon which that order was based. They have therefore waived their contention. (*Kim v. Sumitomo Bank, supra,* 17 Cal.App.4th 974, 979.)

Accordingly, we reject the Barringers' cross-appeal.

### DISPOSITION

The July 20, 2000, "ORDER OF DISMISSAL OF EMINENT DOMAIN PROCEEDING" is reversed.

The December 27, 1999, "ORDER ON SUBMITTED MATTER" regarding litigation expenses and the formal order dated February 4, 2000, are reversed.

The case is remanded to the trial court for further proceedings consistent with this opinion.

On remand, the trial court shall enter a conditional order dismissing from the complaint all claims for the taking of the Remainder Parcel and awarding the Barringers their reasonable litigation expenses for defending against the taking of the Remainder Parcel. The City's claim to take the original Partial Take parcel shall proceed. The trial court shall also dismiss the OSC re Contempt served on the City.

The Barringers' cross-appeal is denied.

The Barringers shall recover their costs on appeal pursuant to Code of Civil Procedure section 1268.720 ("Unless the court otherwise orders, whether or not he is the prevailing party, the defendant in the [eminent domain] proceeding shall be allowed his costs on appeal").

Callahan, J., and Robie, J., concurred.

A petition for a rehearing was denied November 12, 2002, and the opinion was modified to read as printed above. The petition of defendants and appellants for review by the Supreme Court was denied January 22, 2003.