Filed 4/19/17 Certified for Publication 5/11/17 (order attached)

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Colusa)

----

| | |
|---|---|
| CENTRAL VALLEY GAS STORAGE LLC,<br><br>        Plaintiff, Cross-defendant and Respondent,<br><br>        v.<br><br>FRED SOUTHAM et al.,<br><br>        Defendants, Cross-complainants and Appellants. | C078196<br><br>(Super. Ct. No. CV23921) |

This appeal arises out of a condemnation action in which Fred Southam and Southam & Son (collectively Southam) sought to introduce evidence of the value of their land for an underground natural gas storage project based on *reservoir volume*. The trial court's in limine ruling excluded Southam's valuation approach based on evidence all independently operated gas storage projects in California compensate landowners based on *surface acres* contributed to the project. Based on surface acre valuation testimony at trial, the jury found Southam is entitled to a minimum rent of $400 per acre per year for

1

80 acres and an overage rent of 11.82 percent times 4 percent of the annual gross income (AGI) of the 677-acre project.

On appeal, Southam contends (1) on remand Central Valley Gas Storage, LLC (Central Valley) should be required to compute the volume of gas storage under the Southam property, (2) this court's decision in *Pacific Gas & Electric Co. v. Zuckerman* (1987) 189 Cal.App.3d 1113 (*Zuckerman*) precluded the use of surface acres as a valuation measure for natural gas storage leases, (3) Central Valley's in limine motion under Code of Civil Procedure section 1260.040 was defective for lack of cross-examination of the expert who provided a supporting declaration, (4) the trial court should have admitted the testimony of Fred Southam and his expert witness, Harold Bertholf, (5) Southam should have been allowed to present its theory of the case at trial, (6) mathematical errors favored nearby landowners at the expense of Southam, and (7) "Central Valley's allocation of 11.118% of the 4% of the AGI to Southam" violated his Fifth Amendment rights under *United States v. Miller* (1943) 317 U.S. 369 [63 S.Ct. 276, 87 L. Ed. 336].

We conclude the trial court did not err in factually distinguishing the holding in *Zuckerman, supra,* 189 Cal.App.3d 1113 that was decided at a time when there was not yet a developed market in California for natural gas storage leases. The trial court properly considered evidence showing the development of an independently operated gas storage market that relies exclusively on surface acres as the valuation metric. Further, the trial court did not abuse its discretion in excluding a volume-based valuation approach based on Southam's failure to present any evidence this vaulation approach had ever been used in the market for natural gas storage leases. As a result, there is no need to remand this case for Central Valley to make a calculation that is irrelevant for valuation purposes. We also conclude Southam has not established his entitlement to

2

cross examine an expert before that expert may give a declaration in support of a pretrial motion.

The remainder of Southam's arguments are forfeited for failure to develop the argument, to cite any legal authority, or to provide any citation to the appellate record. Accordingly, we affirm the judgment.

## FACTUAL AND PROCEDURAL HISTORY

Central Valley operates an underground natural gas storage project at a depleted gas field in Colusa County. At this site, Central Valley injects natural gas into the underground reservoir for storage and subsequent withdrawal. Central Valley is one of several independent storage providers in California who operate underground gas storage projects at market-based rates. In operating the storage project in Colusa County, Central Valley calculated the boundaries of the storage project along with a buffer sufficient to account for mapping imprecision or gas migration. With the buffer zone, Central Valley determined the gas storage project encompassed 677 acres, of which Southam owns 80 acres.

Central Valley successfully negotiated leases for underground storage with almost all of the landowners who held property within the project zone. Southam was one of two landowners who refused to enter into a lease. Central Valley ultimately filed a complaint with the California Public Utilities Commission under Public Utilities Code section 625 to secure the power of eminent domain to condemn the holdout landowners' underground gas storage rights. The California Public Utilities Commission determined the condemnation was in the public interest and granted Central Valley's complaint. After a settlement with the other holdout landowner, Southam remained the sole landholder against whom Central Valley proceeded by eminent domain. Although Southam never disputed his property rights were subject to eminent domain, he insisted his property was more valuable due to its greater underground storage volume.

3

In August 2013, Central Valley filed a motion to exclude evidence of any valuation method depending on underground storage volume. (Motion No. 1) In support, Central Valley introduced a declaration from its expert witness, Charles Stinson, who explained a market for natural gas storage leases has developed in California over the past 20 years. Stinson further explained that "gas storage operators in California enter into storage leases that compensate landowners based on the amount of surface acreage that the landowners own within the storage boundaries, which includes a buffer zone area to account for fluctuations and uncertainty in the size and location of storage reservoirs . . . . [T]he market in California does not compensate landowners based on such volume and there is good reason for not doing so, given the uncertainty and speculative nature of what is lying underneath the ground, in terms of net thickness of the reservoir, porosity, lateral extent and communication between reservoirs, among others. All of these factors can have significant localized variability that is nearly impossible to determine from the limited data available at the time of development for gas storage."

Southam opposed Central Valley's motion, arguing it was premature and conflicted with this court's holding in *Zuckerman*, *supra*, 189 Cal.App.3d 1113.

In November 2013, the trial court granted Central Valley's motion in part. The trial court found there exists in California a market for natural gas storage lease rights of the type at issue in this case. The trial court also excluded evidence of valuation based on storage volume "[a]bsent admissible evidence of such comparable transactions . . . ."

In February 2014, prior to trial, Central Valley filed an in limine motion to exclude volume valuation testimony at trial. In March 2014, the trial court granted the motion "in that this Court's November 13, 2013, Evidentiary Order No. 1 applies in this case because Southam has failed to present evidence of actual comparable transactions in

4

which the value of gas storage rights was determined based on the volume of the gas storage reservoir." The court order stated it will not admit any evidence or opinion based on a valuation method utilizing storage reservoir volume or any evidence of the volume of the gas storage reservoir for purposes of establishing property value.

The case proceeded to trial by jury, which awarded Southam a minimum rent of $400 per acre per year for 80 acres and an overage rent of 11.82 percent times 4 percent of the annual gross income of the 677-acre project. The jury's verdict was equal to the valuation testimony presented by Central Valley based on a surface acres metric.

## DISCUSSION

## I

### *Remand*

Southam contends, "[t]his matter should be remanded so that Central Valley can compute the relative aliquot volume of the storage sands located on [Southam's] property . . . ." We disagree.

### A.

### *Condemnation Action Valuation of Property for which a Developed Market Exists*

As this court has previously explained, "When private property is taken through eminent domain, the condemning agency must pay 'just compensation' to the owner. (U.S. Const., 5th Amend.; Cal. Const., art. I, § 19.) The measure of just compensation is the fair market value of the property taken. (Code Civ. Proc., § 1263.310.) In normal circumstances the 'fair market value of the property taken is the highest price on the date of valuation that would be agreed to by a seller, being willing to sell but under no particular or urgent necessity for so doing, nor obliged to sell, and a buyer, being ready, willing, and able to buy but under no particular necessity for so doing, each dealing with the other with full knowledge of all the uses and purposes for which the property is reasonably adaptable and available.' (Code Civ. Proc., § 1263.320, subd. (a).) But *where*

5

*there is no relevant market for the property* then the fair market value is to be determined by any method of valuation that is just and equitable.  (Code Civ. Proc., § 1263.320, subd. (b); Evid. Code, § 823.)"  (*Zuckerman*, *supra*, 189 Cal.App.3d at pp. 1126-1127, italics added.)

As in this case, *Zuckerman* involved the question of valuation of natural gas storage leases in a condemnation action.  (189 Cal.App.3d at p. 1121.)  In 1987, when *Zuckerman* was decided, there was no market in California for natural gas storage leases.  (*Id.* at p. 1128, 1135.)  *Zuckerman* stated:  "It may fairly be said that there are no true 'comparables' in dealing with underground storage reservoirs.  There are relatively few such properties in the state, and those noted by the experts involved different geographical locations, temporal transactions, and physical characteristics.  In normal circumstances this would preclude the use of a comparable sales approach.  But it is clear that underground storage properties are sui generis and that normal approaches to valuation are problematical.  For this reason latitude must be accorded an expert in valuing such properties, and any approach that is 'just and equitable' may be considered.  (Evid. Code, § 823; Code Civ. Proc. § 1263.320, subd. (b).)"  (*Zuckerman*, at p. 1128.)  Consequently, *Zuckerman* affirmed the application of Evidence Code section 823, the "special statute [that] deals with the unusual occurrence when there is no relevant market."  (*Zuckerman*, at p. 1135.)

However, when there is "a market for this property in the private market place as demonstrated by the evidence," the trial court errs in admitting evidence of a valuation methodology that ignores the developed market for a particular type of property.  (*County of San Diego v. Rancho Vista Del Mar, Inc*. (1993) 16 Cal.App.4th 1046, 1065.)  To this end, "[c]ourts, both trial and appellate, have the responsibility of insuring that an expert's determination of value takes into account only reasonable and credible factors."  (*Zuckerman*, *supra*, 189 Cal.App.3d at pp. 1113, 1134.)  On review, "the trier of fact's

6

valuation findings will be upheld when they are supported by substantial evidence." (*Id.* at p. 1134.)

## B.

### *The Developed Market for Underground Natural Gas Storage*

Substantial evidence supports the trial court's factual finding a developed market for natural gas storage leases has developed in California since this court's decision in *Zuckerman*, *supra*, 189 Cal.App.3d 1113. Central Valley's expert witness declared a market for natural gas storage lease rights has developed in California over the past two decades. *All* of these leases are based on the number of surface acres the landowners hold within the storage and buffer zone boundaries. Moreover, Central Valley's expert explained there is "good reason" for not valuing gas storage leases based on underground volume due to the speculative nature of the volume that may differ based on reservoir porosity, thickness, extent, and communication with other reservoirs. By contrast, despite being given the opportunity and as the trial court twice noted, Southam could not produce a single actual instance of a natural gas storage lease that based its value on underground volume. These findings support the trial court's exclusion of Southam's volume-based valuation approach.

Because the trial court properly excluded Southam's volume-based valuation approach, we decline to reverse and remand this matter to require Central Valley to attempt to calculate the irrelevant statistic of storage volume under Southam's property.

## II

### *Surface Acres as Valuation Measure*

In a two-sentence argument, Southam claims *Zuckerman*, *supra*, 189 Cal.App.3d 1113, precludes the use of surface acres as a valuation measure for underground natural gas storage. We reject the claim. As explained in part I, *ante,* the trial court properly

factually distinguished *Zuckerman* as applying to a time when the California market for natural gas storage leases had not yet developed.

### III

### *Challenge to Central Valley's In Limine Motion to Exclude Evidence of Valuation Based on Volume*

Southam contends Central Valley's in limine motion to exclude evidence of valuation based on underground storage volume was "infirm, both procedurally and substantively." We reject the contention.

### A.

### *Procedural Objection*

Southam argues Central Valley's in limine motion was "procedurally infirm because it was based on a lack of cross-examination." We are not persuaded.

In support of his argument, Southam relies solely on *Fost v. Superior Court* (2000) 80 Cal.App.4th 724 (*Fost*). *Fost* holds only that a witness may be cross-examined *during trial*. (*Id.* at pp. 735-736.) Here, Southam concedes he had the opportunity and actually did cross-examine Central Valley's expert witness at length during trial. *Fost* therefore does not support Southam's assertion of error.

### B.

### *Substantive Objection*

Southam's argument regarding his "substantive" objection to Central Valley's in limine motion appears to be limited to a single sentence in which he asserts *Zuckerman* "is binding upon this Court on the authority of *Auto Equity Sales v. Superior Court* 57 Cal.2d 450, 454 where an inferior court is bound to honor the precedent set by the higher Court, here the Third District Court [of Appeal] itself in the *Zuckerman* case." We reject the argument for two reasons.

First, *Auto Equity Sales v. Superior Court* (1962) 57 Cal.2d 450 holds the California Supreme Court's decisions are binding on the Court of Appeal, not that the Court of Appeal binds itself with its own prior decisions. As the California Supreme Court explained, "The decisions of [the Supreme] [C]ourt are binding upon and must be followed by all the state courts of California. Decisions of every division of the . . . Courts of Appeal are binding upon all the justice and municipal courts and upon all the superior courts of this state, and this is so whether or not the superior court is acting as a trial or appellate court." (*Auto Equity Sales*, *supra*, 57 Cal.2d at p. 455.) *Auto Equity Sales* does not prevent a Court of Appeal district from departing from its earlier decision when there exists good reason for doing so. (*Lucent Technologies, Inc. v. Board of Equalization* (2015) 241 Cal.App.4th 19, 35.)

Second, as we have explained, the trial court reached the correct result by factually distinguishing *Zuckerman* as applying at a time when there had not yet developed a market for natural gas storage leases. *Zuckerman* did not purport to constrain valuation methodology for natural gas storage leases in California regardless of whether a market developed. (See 189 Cal.App.3d at p. 1121.) Thus, *Zuckerman* provides no support for Southam's argument a volume-based valuation method should be allowed when a developed market in California invariably uses a different metric. (*Id.* at pp. 1128, 1135.)

## IV

### *Testimony of Southam and Bertholf*

Southam asserts his own testimony as well as that of his expert, Bertholf, should have been admitted to prove Southam's property "held 43% of the gas storage sands." We deem the assertion forfeited for lack of any lack of legal analysis or citation to any legal authority. "To demonstrate error, appellant must present meaningful legal analysis supported by citations to authority and citations to facts in the record that support the

9

claim of error.  (*City of Lincoln v. Barringer* (2002) 102 Cal.App.4th 1211, 1239, fn. 16; *In re Marriage of Nichols* (1994) 27 Cal.App.4th 661, 672-673, fn. 3.)  When a point is asserted without argument and authority for the proposition, 'it is deemed to be without foundation and requires no discussion by the reviewing court.'  (*Atchley v. City of Fresno* [(1984)] 151 Cal.App.3d [635,] 647; accord, *Berger v. Godden* [(1985)] 163 Cal.App.3d [1113,] 1117 ['failure of appellant to advance any pertinent or intelligible legal argument . . . constitute[s] an abandonment of the [claim of error'].)"  (*In re S.C.* (2006) 138 Cal.App.4th 396, 408.)

## V

### *Southam's Opportunity to Advance its Theory of the Case*

The entirety of Southam's next contention consists of the following sentence: "Southam was entitled to have [its] fact based theory of his case go to the jury."  The contention is forfeited for lack of any analysis or a single citation to the appellate record.  (*City of Lincoln v. Barringer* (2002) 102 Cal.App.4th 1211, 1239, fn. 16; *Miller v. Superior Court* (2002) 101 Cal.App.4th 728, 743 [failure to cite to the record waives the claim of error].)

## VI

### *"Fallacy" in Referring to Other Owners of the Project*

Southam claims mathematical errors favored nearby landowners at his expense. The argument contains no legal analysis or legal authority in support and is therefore forfeited.  (*In re S.C.*, *supra*, 138 Cal.App.4th at p. 408; *City of Lincoln v. Barringer*, *supra*, 102 Cal.App.4th at p. 1239, fn. 16.)

## VII

### *Allocation of 11.18 Percent of the 4 Percent of AGI to Southam*

Finally, Southam asserts his Fifth Amendment right to just compensation was undermined by "Central Valley's allocation of 11.18% of 4% of the AGI" to him.  The

assertion is forfeited for lack of meaningful analysis or any citation to the appellate record.  (*City of Lincoln v. Barringer*, *supra*, 102 Cal.App.4th at p. 1239, fn. 16; *Miller v. Superior Court*, *supra*, 101 Cal.App.4th at p. 743.)

DISPOSITION

The judgment is affirmed.  Central Valley Gas Storage LLC shall recover its costs on appeal.  (Cal. Rules of Court, rule 8.278(a)(1) & (2).)


/s/

HOCH, J.


We concur:



/s/

HULL, Acting P. J.



/s/

RENNER, J.

CERTIFIED FOR PUBLICATION


IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Colusa)

----


| CENTRAL VALLEY GAS STORAGE LLC, | |
|---|---|
| Plaintiff, Cross-defendant and Respondent, | C078196 |
| v. | (Super. Ct. No. CV23921) |
| FRED SOUTHAM et al., | ORDER CERTIFYING OPINION FOR PUBLICATION |
| Defendants, Cross-complainants and Appellants. | [NO CHANGE IN JUDGMENT] |


BY THE COURT:

APPEAL from a judgment of the Superior Court of Colusa County, Jeffery A. Thompson, Judge. Affirmed.

TREZZA, ITHURBURN, STEIDLMAYER & ITHURBURN and Mark G. Steidlmayer for Defendants, Cross-complainants and Appellants.

DAY CARTER & MURPHY, Ralph R. Nevis and E. Ryan Stephensen for Plaintiff, Cross-defendant and Respondent.

1

The opinion in the above-entitled matter filed on April 19, 2017, was not certified for publication in the Official Reports.  For good cause it now appears the opinion should be published in the Official Reports and it is so ordered.  There is no change in the judgment.


_____/s/_____
HULL, Acting P. J.


_____/s/_____
HOCH, J.


_____/s/_____
RENNER, J.