Filed 2/8/21  Arrieta v. Snowline Joint Unified School Dist. CA4/2

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION TWO

| | |
|---|---|
| TONYA ARRIETA et al., | |
| Plaintiffs and Appellants, | E072271 |
| v. | (Super.Ct.No. CIVDS1415926) |
| SNOWLINE JOINT UNIFIED SCHOOL DISTRICT et al., | OPINION |
| Defendants and Respondents. | |

APPEAL from the Superior Court of San Bernardino County.  Thomas S. Garza, Judge.  Affirmed.

Law Office of Robert D. Conaway and Robert D. Conaway for Plaintiffs and Appellants.

Cummings, McClorey, Davis, Acho & Associates and Ryan D. Miller for Defendants and Respondents.

Tonya Arrieta and Connor Arrieta sued Snowline Joint Unified School District (the District) and Leonard Lopez (Lopez) for (1) failing to prevent a hostile work

1

environment (Gov. Code, § 12940, subd. (k)); (2) retaliation (Gov. Code, § 12940); (3) false imprisonment; (4) stalking (Civ. Code, § 1708.7); and (5) a violation of the Tom Bane Civil Rights Act (Civ. Code, § 52.1). After a 29-day trial, the jury found in favor of the District and Lopez (collectively, defendants). On appeal, Tonya[1] and Connor (collectively, plaintiffs) raise issues pertaining to the trial court's response to a question from the jury. We affirm the judgment.

## FACTUAL AND PROCEDURAL HISTORY

### A.    FIRST AMENDED COMPLAINT

Plaintiffs filed two complaints against defendants, which were consolidated. In the first amended complaint in case No. CIVDS1415926, plaintiffs alleged that (1) Tonya was Connor's Mother; (2) Tonya was a teacher in the District; (3) Connor was a student in the District; and (4) Lopez was the principal at the school where Tonya worked and Connor attended school. Plaintiffs claimed that Lopez sexually harassed Tonya "starting on or about September 20, 2013." In the sexually hostile work environment cause of action, plaintiffs alleged the District failed to provide sexual harassment classes and, more generally, that the District "did not take all steps reasonably necessary to prevent harassment and retaliation as required by California Government Code § 12940(k)."

---

[1] We use first names for the sake of clarity because plaintiffs share the same last name. No disrespect is intended.

2

B.     PLAINTIFFS' EVIDENCE

Lopez began working as principal at Serrano High School (the school) in May 2013.  Tonya also began working at the school in 2013.  Tonya taught in the ROP program.[2]  Jayne Harrower also taught in the school's "ROP" program.  In 2013, the supervisor for the school's ROP program was Matt Wells.

During the fall 2013 semester, which began in August, Lopez came into Tonya's classroom approximately 15 times while Tonya was teaching.  Lopez would typically stay in the classroom for 15 minutes and watch Tonya.  On some occasions, Lopez would place his hand on his thigh and "adjust himself a lot," while watching Tonya.  Tonya felt uncomfortable when Lopez would enter her classroom.

On September 20, 2013, Tonya and Lopez met in Lopez's office.  While in Lopez's office, Lopez spoke to Tonya "about how he had a lot of chemistry with [her] . . . and he started talking about an ex-girlfriend and how [Tonya] looked like her and . . . [¶] . . . [¶] . . . [t]hat she was wild and she would get on top of him and take control and that [Tonya] looked like [she] would do that."  Lopez caused Tonya to feel "really nervous and scared."  As Tonya exited the office, Lopez blocked her path.  Lopez put his arms around Tonya, so that his hands were touching her clothed buttocks.  Lopez said, " 'Mmm,' " while his hands were on Tonya's buttocks.  Tonya felt Lopez's erect penis against her.  With one hand on Tonya's buttock, Lopez asked "if he could touch" while using his free hand to gesture at Tonya's breasts; he also grazed her

_____

[2]  The ROP classes were part of "the medical pathway . . . kind of like a medical academy at [the school]," so we infer that ROP means regional occupational program.

3

breasts with his hand. Tonya said "no" and slapped Lopez's hand. Lopez "looked really mad" and said, "Okay." Tonya left.

After leaving Lopez's office, Tonya cried and told Harrower about the incident. Tonya felt embarrassed by the incident. On September 23, 2013, Harrower reported the September 20th incident to her and Tonya's supervisor, Matt Wells. The District investigated the incident between Tonya and Lopez and wrote a report about the investigation in October 2013. Lopez was placed on administrative leave until November 2013.

When Lopez returned from administrative leave, he drove past his assigned parking place in the school's parking lot, drove "all the way around the parking lot and [drove] slow by [Tonya] and stare[d] at [her]." On two occasions, Lopez followed Tonya from the school's office to her classroom. When Tonya walked faster, Lopez also walked faster, "and he was going fast like if [Tonya] were to stop he would slam into [her]." Within a month or two of Lopez returning from administrative leave, he followed Tonya home.

At the end of 2013 or in early 2014, after Tonya had complained several times to the District's director of human resources about Lopez following her, Lopez stopped following her. At that point, Lopez began visiting her son's, Connor's, classes. In the 2014-2015 schoolyear, Connor was a sophomore at the school. In 2014 or 2015, Connor complained to Tonya "that Lopez was showing up at his class all the time in the weight room especially and that [Lopez] was staring at him."

4

Connor changed schools in 2015.  At the time of trial Tonya continued to work at the school.  Lopez stopped working for the District in June 2015.

### C.     CLOSING ARGUMENT

During closing argument, Mr. Conaway, plaintiffs' attorney said, " 'When did this start?'  The September 20th, you know, put aside the fact that we have a report in there with the wrong date . . . .  [¶]  Why would you just start with the events of September 20th?  Is the bias so bad in this District that only another employee comes forward to make a complaint like Jane Harrower?  Are we going to investigate it?"

Later in his argument, Conaway said, "I'm just making sure I've covering [*sic*] the hostile work environment.  Again, this is where the facts overlie.  You've got the events before 9/20, which—you've got the events on 9/20.  You've got this interview process that's a little bit of a concealment of who and what the intentions are.  And then you have the ongoing harassment."

### D.     JURY INSTRUCTION

For the cause of action of failing to prevent a hostile workplace (Gov. Code, § 12940, subd. (k)), the trial court instructed the jury with CACI No. 2527 as follows: "Tonya Arrieta claims that Leonard Lopez and [the District] failed to take all reasonable steps to prevent retaliation based on her complaint regarding Leonard Lopez.  To establish this claim, Tonya Arrieta must prove all of the following:  [¶] . . . [¶]  3.  That Leonard Lopez and [the District] failed to take all reasonable steps to prevent the retaliation; [¶] . . . [¶]  5.  That Leonard Lopez's and [the District's] failure to take all

5

reasonable steps to prevent retaliation was a substantial factor in causing Tonya Arrieta's harm."

    E.    <u>SPECIAL VERDICT FORM AND JURY QUESTION</u>

The jury was given a 20-page special verdict form that presented many questions. On the fifth page of the form, the following question was presented to the jury, with the option to respond "yes" or "no": "1. Did [the District] fail to take all reasonable steps to prevent the harassment/discrimination/retaliation?"[3]

During deliberations, the jury sent a question to the trial court asking, "Page 5 Question 1. Does this question apply pre-allegation, post allegation, or both[?] (Allegation = Sept. 20, 2013 meeting)." The trial court discussed the jury's question with the parties' attorneys. Defendants' attorney said, "I don't think there w[ere] any allegations prior to September 20th." Defendants' attorney asserted the District was not aware of a hostile work environment prior to Harrower's September 23, 2013, report, so it could not be liable for conduct prior to September 20.

---

[3] In plaintiffs' hostile work environment cause of action, they alleged the District failed to prevent harassment and retaliation. (Gov. Code, § 12940, subd. (k).) In the jury instruction, the focus was on a failure to prevent retaliation. On the special verdict form, the jury was asked about the District's failure to prevent harassment/discrimination/retaliation. Our understanding is that, while the pleading, jury instruction, and special verdict form do not perfectly align, they all pertain to a claim that the District failed to prevent a hostile work environment. (Gov. Code, 12940, subd. (k).) The jury was given a separate instruction about the District's alleged failure to correct a hostile work environment. (Gov. Code, § 12940, subd. (j).) We do not include that instruction herein because it is focused on correction, rather than prevention.

Conaway argued that Tonya complained to Wells, prior to September 20, 2013, that Lopez " 'was in [her] class the whole time.' " However, according to Conaway, Tonya did not recall exactly when she shared that information with Wells. Later in the discussion, Conaway contended, "[T]he relevant event window here is obviously when the contact starts with Tonya." Next, Conaway argued that the cause of action against the District concerned "failing to prevent, which gets to a policy issue."

The trial court said, "I'm just trying to guide the jury in terms of their question. They don't know the time frame to consider." The court continued, "It appears based on the evidence all counsel have reviewed this afternoon and this morning, it appears that there's nothing to lock down and substantiate the time frame before September 20th. [¶] So in doing so, it would appear that the jury would need to be instructed that they need to consider the issue from September 20th and thereafter." The trial court gave the following answer to the jury's question: "The jury is to consider from Sept. 20, 2013 and thereafter."

On the special verdict form, in response to the first question on page five, i.e., the subject of the jury's question, the jury marked the "Yes" line, reflecting that the District "fail[ed] to take all reasonable steps to prevent the harassment/discrimination/retaliation." The jury then proceeded to the next question on the form, which concerned causation. The causation question asked whether the District's failure to prevent harassment/discrimination/retaliation was a substantial factor in causing Tonya's harm. The jury marked the "No" line.

**DISCUSSION**

A.     <u>EXCLUSION OF EVIDENCE</u>

Plaintiffs assert the trial court's response to the jury's question effectively resulted in the exclusion of evidence pertaining to events before September 20, 2013, thereby denying plaintiffs their federal and state constitutional rights to a jury trial. The trial court's response to the jury's question did not exclude evidence. Therefore, we interpret plaintiffs' argument as asserting the trial court directed the jury to disregard evidence that was presented during the trial.

We begin with plaintiffs' premise that the trial court directed the jury to disregard evidence. The special verdict form question at issue pertained to the cause of action for failing to prevent a hostile workplace under California's Fair Employment and Housing Act (FEHA). (Gov. Code, § 12940, subd. (k).) A plaintiff/employee bears the burden of proof in a FEHA cause of action. (*Green v. State of California* (2007) 42 Cal.4th 254, 263.)

In the instant case, after the trial court answered the jury's question regarding the element of failing to prevent a hostile work environment, the jury found in favor of plaintiffs on that element. The jury could not have found in favor of plaintiffs if the trial court had directed the jury to disregard all of plaintiffs' evidence on the topic, given that plaintiffs bore the burden of proof. Thus, to the extent the trial court's answer caused the jury to disregard some evidence, there was still a sufficient amount of evidence for the jury to find in plaintiffs' favor on the element of the District failing to prevent a hostile workplace. In other words, the jury's "yes" answer on the special verdict form

8

indicates the jury did not interpret the court's answer as instructing it to disregard all relevant evidence.

Plaintiffs assert the exclusion of evidence is a constitutional error that is reversible per se. If a court excludes all of a party's evidence, then the error is reversible per se because a prejudice analysis cannot be conducted when the evidence was not presented. When some evidence has been presented then an appellant must demonstrate prejudice. (*Gordon v. Nissan Motor Co., Ltd.* (2009) 170 Cal.App.4th 1103, 1114-1115.)

In the instant case, plaintiffs were able to present their evidence and the jury found in plaintiffs' favor on the element of the District's failure to prevent a hostile work environment. Because plaintiffs presented their evidence, and, after the trial court's answer, there was sufficient evidence for the jury to find plaintiffs' met their burden of proof, plaintiffs would need to demonstrate prejudice. Any error would not be reversible per se.

In their appellants' opening brief, plaintiffs give a list of evidence and then conclude, "Damage (cause and effect) evidence was there, but the Court denied the jury access to same in coming to their verdict." We presume plaintiffs are asserting that they suffered prejudice because the trial court instructed the jury to disregard evidence on the element of causation.

On the special verdict form, the jury was asked about the District's failure to prevent a hostile workplace, and the jury found in favor of plaintiffs on that issue. The next question on the special verdict form was whether the District's failure was a

9

substantial factor in causing harm to Tonya. On causation, the jury found in the District's favor.

Plaintiffs provide no analysis explaining how the trial court's answer to the jury's question could have excluded too much evidence for plaintiffs to establish causation, yet left in sufficient evidence for plaintiffs to prove the failure to prevent a hostile workplace. Temporally, the failure to prevent would have preceded causation and damages. Therefore, to the extent the trial court improperly made the start date for the cause of action too late, e.g., the jury should have considered a failure to prevent *before* September 20, 2013, we cannot see how that alleged error would have prejudicially impacted the causation element. The jury found in favor of plaintiffs on the first element within the cause of action, i.e., the failure to prevent. Therefore, any error related to the start date for the cause of action would not have impacted the second element within the cause of action, i.e., causation. Rather, it appears the jury found that the District failed to prevent a hostile workplace, but that failure was not a substantial factor in any harm suffered by Tonya. In sum, plaintiffs have not established prejudice. (See Code Civ. Proc., § 475 [no judgment may be reversed unless the error is prejudicial].)

B. IMPROPER COMMENT AND COERCED VERDICT

Plaintiffs contend the trial court's answer to the jury's question was an improper comment on the evidence, which resulted in a coerced verdict. The jury's question, and the trial court's response, pertained to the element of the District's failure to prevent a hostile work environment. The jury found in favor of plaintiffs on that element.

10

Therefore, to the extent the trial court coerced a finding on that element, the coercion favored plaintiffs, which means any error would be harmless. (See Code Civ. Proc., § 475 [no judgment may be reversed unless the error is prejudicial].)

C.    NOTICE REQUIREMENT:  FAILURE TO PREVENT

Plaintiffs contend the trial court erred in its response to the jury's question because the trial court effectively added a notice requirement to the element of failing to prevent a hostile work environment. They support that contention only with the following sentences: "*CACI 2525* used [*sic*] defines supervisor and then allow [*sic*] argument during deliberations from counsel to effectively diminish if not eliminate the reasonable inferences as to who under CACI functioned as a supervisor or agent. [¶] *CACI 2521(a)* Talks about what the law on notice is—it can be agents that knew or should have known."

Plaintiffs do not set forth the relevant statutory elements for their cause of action, and they do not analyze whether notice is an element of the cause of action. Due to plaintiffs' failure to provide meaningful legal analysis concerning whether notice is an element of their cause of action, we deem this issue to be forfeited. (*Central Valley Gas Storage LLC v. Southam* (2017) 11 Cal.App.5th 686, 694-695.)

D.    PROOF OF NOTICE

Plaintiffs contend, "Notice for the school district under the applicable CACI's was satisfied making the September 20, 2013 cutoff charge to the jury reversible error." (All caps. and boldface omitted.) It is not clear to us how the trial court's answer to the jury's question created a notice requirement related to the District's failure to prevent a

11

hostile work environment. Nevertheless, if the trial court's answer did create a notice requirement for the District in regard to the failure to prevent element, then the jury found that notice requirement was met because the jury found in favor of plaintiffs on the failure to prevent element. Given the jury found in favor of plaintiffs on this element, we agree with plaintiffs that any notice requirement was satisfied.

E. NOTICE REQUIREMENT: STALKING AND FALSE IMPRISONMENT

Plaintiffs contend the trial court's answer improperly created a notice element for the false imprisonment and stalking causes of action that they brought against Lopez.

"Absent some contrary indication in the record, we presume the jury follows its instructions." (*Cassim v. Allstate Ins. Co.* (2004) 33 Cal.4th 780, 803-804.) In regard to the special verdict form, the jury was instructed: "You must consider each question separately." The jury's question and the trial court's response pertained to the timeline for an element within the hostile work environment cause of action. There is no indication that the jury took the trial court's answer and applied it to different causes of action against a different defendant, e.g., stalking and false imprisonment against Lopez. Given that (1) the jury was specifically instructed each question was to be separately considered; (2) we must presume the jury followed that instruction; and (3) there is no indication the jury failed to follow that instruction, we find plaintiffs' contention unpersuasive.

Plaintiffs assert the addition of the notice element violated their right of due process. There is no indication the trial court added a notice element to the false

12

imprisonment and stalking causes of action because the trial court's answer to the jury concerned the hostile work environment cause of action.  Accordingly, we conclude plaintiffs' right of due process was not violated.

F.    IMPEACHMENT EVIDENCE

Plaintiffs contend the trial court's answer to the jury's question also excluded relevant impeachment evidence pertaining to Connor's civil rights cause of action.  As explained *ante*, the jury's question and the trial court's answer pertained to an element within the hostile work environment cause of action.  There is no indication the jury applied the trial court's answer to a different cause of action involving a different plaintiff.

G.    ZIMMERMAN TESTIMONY

1.    *PROCEDURAL HISTORY*

The parties' attorneys and the trial court discussed the jury's question and the trial court's proposed response.  The discussion occurred in court, on the record, outside the presence of the jury.  The relevant portion of the discussion is as follows:

"Mr. Miller [(defendants' attorney)]:  I don't think there was any allegations prior to September 20th.

"Mr. Mortimer [(defendants' attorney)]:  I think they were post-September 20, that's my understanding too.

"Mr. Conaway [(plaintiffs' attorney)]:  Well, there were the two girls in the classroom.  And there was Dr. Morris.

"Mr. Mortimer:  Don't they have to be put on notice?

13

"Mr. Conaway: It was mediation with Dr. Morris.

"Mr. Mortimer: Not involving Mr. Lopez or the District. That's a separate issue.

"Mr. Zimmerman [(the District's assistant superintendent of human resources)]: It was about a conference period.

"Mr. Mortimer: Yeah, it was a completely—

"Mr. Zimmerman: It was just a conversation between her and the principal."

### 2. *ANALYSIS*

Plaintiffs contend that the District's assistant superintendent of human resources, Mr. Zimmerman, testified during the discussion regarding the jury's question. Plaintiffs cite the statements, "It was about a conference period" and "It was just a conversation between her and the principal." Plaintiffs assert it is improper to receive "evidence out of Court." Mr. Zimmerman's comments occurred on the record, while court was in session, during a discussion of the jury's question. It is unclear in what manner plaintiffs believe Mr. Zimmerman's statements (A) were evidence, and (B) were made outside of court. Because plaintiffs do not offer meaningful legal analysis to explain their contention, we deem the issue to be forfeited. (*Central Valley Gas Storage LLC v. Southam*, *supra*, 11 Cal.App.5th at pp. 694-695.)

### H. APPELLANTS' REPLY BRIEF

In their appellants' reply brief, plaintiffs assert the trial court erred by communicating with the jury outside of the courtroom, and that their right of confrontation was violated by the exclusion of evidence. We do not address issues that

are raised for the first time in a reply brief. (*Reichardt v. Hoffman* (1997) 52 Cal.App.4th 754, 764.)

I.      ADEQUACY OF THE RECORD

Defendants contend that plaintiffs failed to provide an adequate record on appeal because plaintiffs did not provide "juror affidavits, or anything else that would tend to show but for the trial court's answer to the jury question, a different verdict would have been reached." We would not expect affidavits, which were not presented in the trial court, to be part of the record on appeal. (*In re Angel L.* (2008) 159 Cal.App.4th 1127, 1141.) Accordingly, we are not persuaded by defendants' assertion that the record is inadequate.

## DISPOSITION

The judgment is affirmed. Respondents are awarded their costs on appeal. (Cal. Rules of Court, rule 8.278(a)(1).)

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

MILLER _____
                                                                J.

We concur:

RAMIREZ _____
                  P. J.

RAPHAEL _____
                  J.

15