Filed 2/20/25  Tower Hotels Fund 2014 v. Kauai Lagoons Grand Ave. Partners CA2/4

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FOUR

| | |
|---|---|
| TOWER HOTELS FUND 2014,<br><br>Plaintiff and Appellant,<br><br>v.<br><br>KAUAI LAGOONS GRAND AVENUE PARTNERS et al.,<br><br>Defendants and Respondents. | B328039<br>(Los Angeles County<br>Super. Ct. No. BC604859) |

APPEAL from a judgment of the Superior Court of Los Angeles County, Jon R. Takasugi, Judge.  Affirmed.

Keesal, Young & Logan, Samuel A. Keesal, Jr., Michelle L. Abdolhosseini, Maya Barba and Ben Suter for Plaintiff and Appellant.

Baute Crochetiere Hartley & McCoy, David P. Crochetiere, Gina McCoy and Mark D. Baute for Defendant and Respondent.

## INTRODUCTION

Appellant Tower Hotels Fund 2014, LLC (Tower Fund) sued its business partner, respondent Kauai Lagoons Grand Avenue Partners, LLC (GAP), for breach of contract. Tower Fund alleged GAP improperly entered certain agreements on behalf of their partnership without Tower Fund's consent. After a 13-day trial, the jury rendered a verdict for GAP, finding Tower Fund had failed to perform its own obligations under the partnership agreement.

Tower Fund now appeals, arguing the trial court should have permitted it to assert causes of action for fraud and negligent misrepresentation, allowed it to seek rescission and restitution as remedies, and instructed the jury on the priority of certain clauses within the contract. Tower Fund also contends GAP's closing argument confused and prejudiced the jury. We conclude the trial court did not abuse its discretion when it excluded the fraud and negligent misrepresentation claims, the court properly barred the rescission remedy, Tower Fund suffered no prejudice by the exclusion of the restitution remedy or the failure to instruct, and Tower Fund failed to preserve its right to challenge the closing argument on appeal. Therefore, we affirm the judgment.

## FACTUAL AND PROCEDURAL BACKGROUND

### I. *The Partnership*

There is no controversy about the basic facts of this dispute. Tower Fund had an agreement to buy a 450-acre piece of land on the island of Kauai, which it wanted to see developed into a resort. At the end of April 2014, Tower Fund paid a deposit of $1 million on a total purchase price of $60 million. But it did not have the remaining $59 million, or any funds for the

2

subsequent development; it only had $7 million.  It needed a partner to foot the rest of the bill, and it had until the end of 2014 to find one.

Tower Fund identified non-party Oaktree Capital Management/Oaktree Real Estate Opportunities Fund IV (Oaktree) as a potential partner and the two entities began negotiations in May 2014.  In August 2014, Tower Fund signed a non-binding term sheet with Oaktree, Tower Hotels Kauai 2014, LLC (Tower Hotels), and Tower Development Incorporated (Tower Development).  The plan at the time was that Oaktree would supply the remaining funds to buy the land and Tower Development would serve as the project developer.

In an entirely separate transaction also completed in August 2014, Oaktree acquired respondent Timbers Resort Management, LLC (Timbers).

In December 2014, the plan to purchase and develop the subject property was presented to an "investment committee" within Oaktree, which rejected it.  With time running short to execute a binding contract for funds and complete the purchase of the land, Oaktree told Tower Fund that Oaktree would only invest in the project if Tower Fund agreed that Timbers would replace Tower Development as the project developer.  Tower Fund accepted the condition.

Oaktree created a special purpose entity, GAP, to handle its investment in the property.  At the end of December 2014, GAP signed an agreement (Lagoons agreement) with Tower Fund and Tower Hotels, creating respondent Tower Kauai Lagoons, LLC (Lagoons) as the vehicle for their partnership; Lagoons would own the property and manage the development. GAP controlled two of three seats on the executive committee of Lagoons; Tower Fund held the other.  The property purchase was closed December 31, 2014.

3

The relationship between Tower Fund and GAP collapsed soon thereafter. The parties had not agreed to a business plan, and Tower Fund did not approve the one GAP proposed. In November 2015, Tower Fund notified GAP that Tower Fund would like to be bought out of the project; Tower Fund also communicated its belief that GAP had violated the terms of the Lagoons agreement. The two could not resolve their differences, and this litigation followed.

II.     *Pretrial*

A.     *Initial Complaint*

On December 22, 2015, Tower Fund filed a complaint for breach of contract, breach of fiduciary duty, accounting, and declaratory relief against GAP, Timbers, and Lagoons.[1] The complaint alleged that Lagoons could only execute contracts with affiliates of its members (i.e. affiliates of GAP, Tower Fund, and Tower Hotels) if those contracts were first approved by the non-affiliated members. Lagoons had signed a series of contracts with Timbers as the project developer. Since both Timbers and GAP were owned by Oaktree, Timbers was an affiliate of GAP, so Tower Fund alleged any contracts with Timbers required Tower Fund's assent, which had not been given. The complaint also alleged that GAP and Lagoons improperly requested additional capital from Tower Fund and denied Tower Fund access to the books and records of Lagoons.

---

[1]     The breach of contract and breach of fiduciary duty causes of action were not asserted against Lagoons. Tower Fund also asserted derivative claims on behalf of Lagoons, but those claims were voluntarily dismissed during trial and are not relevant to this appeal.

4

B.    *Amended Complaint*

In August 2016, Tower Fund obtained leave to amend the complaint.  It removed Timbers from the breach of contract claim and added  two new causes of action against GAP: fraud and negligent misrepresentation.[2]  Tower Fund alleged GAP had never intended to let Tower Development be the project developer.  According to Tower Fund, GAP instead planned to install Timbers in that role, then waited until the last moment to make that request so Tower Fund would be unable to effectively object.  Tower Fund also alleged that GAP never intended to abide by the Lagoons agreement.

C.    *Demurrer*

Timbers and Lagoons filed an answer, while GAP demurred to the fraud and negligent misrepresentation claims.  GAP argued that mere failure to perform on a contract does not prove either fraud or negligent misrepresentation.  Tower Fund responded that GAP was dodging the real issues: during the contract negotiations, GAP had concealed its intent to replace Tower Development with Timbers, and GAP had superior knowledge of the relevant evidence.  In passing, Tower Fund also suggested GAP had never intended to perform on the contract.  Tower Fund closed with an alternative request for leave to amend and plead additional facts regarding GAP's conduct during contract negotiations.

The demurrer was heard in May 2017.  The trial court issued a tentative ruling, which found Tower Fund had failed to properly identify any misrepresentations but granted leave to amend.  However, the tentative was

---

[2]    The amended complaint initially asserted the negligent misrepresentation claim against all defendants, but Tower Fund voluntarily dismissed Timbers and Lagoons from that cause of action before they filed their answers.

5

adopted only in part; the minute order states the demurrer was sustained without leave to amend. There was no court reporter present, and the court did not issue any subsequent order.

GAP then filed an answer.

### D.     *Further Motion Practice*

In August 2018, GAP sought leave to file a cross-complaint against Tower Fund.[3]  Tower Fund in turn brought a motion for leave to file a second amended complaint, which would seek rescission of the Lagoons agreement based on "mistake, duress and fraud."  The trial court denied Tower Fund's motion to amend, construing it as an untimely motion to reconsider the court's decision on GAP's demurrer.

In January 2020, Tower Fund again sought leave to file a second amended complaint, this time asking permission to revive the fraud and negligent misrepresentation claims.  The trial court again denied the request. The court based its ruling on a "combination" of the age of the case, unexplained delay in filing the motion, and the insufficiency of the allegations and evidence.[4]

In March 2020, GAP and Timbers moved for summary judgment on Tower Fund's complaint; alternatively, they sought summary adjudication of each remaining cause of action in the complaint.  The motion was heard in

---

[3]     The motion was granted, but the cross-complaint was voluntarily dismissed before trial and is not relevant to this appeal.

[4]     The assigned trial judge was the Honorable Richard E. Rico.  Tower Fund sought writ review of Judge Rico's ruling on this motion.  The petition was denied.  Judge Rico retired after the hearing on this motion, and the case was assigned to the Honorable Jon R. Takasugi.

November 2020 and the trial court granted summary adjudication on the claims for breach of fiduciary duty and declaratory relief.[5] The breach of contract cause of action against GAP survived, as did the accounting cause of action against GAP, Timbers, and Lagoons.

### III. *Trial*

The court held a final status conference on September 1, 2022. At the conference, Tower Fund made an oral[6] motion for leave to amend the complaint to revive its fraud and negligent misrepresentation claims. The motion was denied.

On September 12, 2022, the court heard and ruled on motions in limine. Opening statements were made on September 15, 2022.

Over the subsequent 10 trial days, 11 witnesses testified. Tower Fund raises no issue with the testimony submitted, or the court's rulings on individual objections. On September 30, 2022, the last day of testimony, Tower Fund voluntarily dismissed its accounting claim. Only the breach of contract claim against GAP remained.

On October 3, 2022, GAP moved for nonsuit on that claim. The court granted the motion in part, ruling that Tower Fund could not argue for breach of contract based on any alleged failure to provide copies of books and records. Closing argument followed.

---

[5] The trial court granted summary adjudication in favor of Lagoons on the declaratory relief action, though Lagoons had not joined in the motion. No party objected, then or later, and the order has not been raised as an issue on appeal.

[6] The request was apparently also included in Tower Fund's trial brief, which is not part of the record on appeal.

During closing argument, counsel for GAP criticized Tower Fund, as well as its principal officers and investors: "That is crazy town, and that's because they're greedy and they think they can fool a Los Angeles jury into guaranteeing their high-risk investments. That's all that is. It's pure garbage. . . . [T]hese schmucks from Honolulu tried to extort us. . . . And the guy that loved us, that approved everything, is now saying, I'm going to sue the shit off you, embarrass you, extort you and get an injunction." The court interjected upon hearing the four-letter word, and counsel agreed to "tone it down."

Before long, however, GAP's counsel returned to the inflammatory language, calling one of Tower Fund's investors "the Coconut Dreamer," another investor a "clown," and comparing them to "young, dumb, lazy, failed Goldman Sachs bankers." He referred to Tower Fund as a "renegade minority partner" trying to hold GAP "hostage" and described Tower Fund's investors again as "these schmucks . . . in their fancy offices sending each other e-mails with smiley faces about how they're going to extort us."

Counsel for GAP also discussed the possible consequences of the jury's verdict, referring to the creation of 140 jobs that might last for years "if we avoid getting hit in this case." He elaborated on this point, comparing the practical harms potentially caused by a verdict for plaintiff or defense: "They're riding on our money. . . . They still have their investment. Nothing you guys do will change that. But if you say there's a breach . . . then there's [*sic*] going to have to stop that project in its tracks. . . . A yes verdict, that there's a breach, is the cost of the jobs to hundreds of people who, right now, are selling the units, fluffing the pillows, cutting the grass; the people at Timbers right now. If we can't pay another dollar to Timbers because you guys say that's a breach, or we can't enter into an agreement with Timbers

8

because you guys say that's a breach, then we cannot pay those people. We'd have to shut that project down. It's going to hurt all of us, investors on both sides of this."

Counsel for Tower Fund did not object to any of the comments made by counsel for GAP during closing arguments. On October 5, 2022, the jury returned its verdict, finding Tower Fund had failed to perform its obligations under the contract. On January 11, 2023, the trial court entered judgment for GAP, Timbers, and Lagoons, in accord with the jury verdict and the pretrial rulings.

IV. *Post-Trial*

Tower Fund timely filed motions for new trial and for judgment notwithstanding the verdict (JNOV). In the motion for new trial, Tower Fund first argued there was no evidence to support the verdict because Tower Fund's contractual obligation was to provide its $7 million investment, which it had done. Second, Tower Fund argued GAP's counsel had inflamed and misled the jury during closing argument by claiming a verdict for Tower Fund would put hundreds of people out of work and by conflating Tower Fund's investors with the entity itself. Finally, Tower Fund argued the trial court should have made different evidentiary rulings and ordered the jury back to answer additional questions on the jury form. The motion for JNOV made the same arguments.

The trial court heard and denied both motions on March 1, 2023. The court found substantial evidence that Tower Fund had obligations beyond merely investing $7 million, including an obligation to execute the agreements necessary to fulfill the purpose of the venture. The court also found substantial evidence Tower Fund breached that obligation by

9

withholding its signature in a blanket fashion as part of a strategy to force GAP to buy it out. Finally, the court determined that neither its own actions nor those of GAP's counsel had resulted in prejudice to Tower Fund.[7]

Tower Fund timely appealed.

## DISCUSSION

Tower Fund raises four issues on appeal. First, it argues the trial court should have allowed it to amend its operative complaint and present its fraud and negligent misrepresentation claims to the jury. Second, Tower Fund contends the court should have allowed it to seek the remedies of rescission and restitution during trial. Third, it claims the court should have instructed the jury on the meaning of a specific provision within the Lagoons agreement. Fourth and finally, Tower Fund asserts that the closing arguments made by GAP's counsel confused and prejudiced the jury.

We conclude the trial court did not abuse its discretion by denying Tower Fund's repeated requests to amend the complaint. We likewise conclude the trial court properly excluded the rescission remedy. However, we do not reach the merits on the restitution remedy or the jury instructions because Tower Fund has failed to demonstrate prejudice. And Tower Fund has forfeited any challenge to GAP's closing argument by failing to lodge a timely objection.

---

[7] At one point in its opening brief, Tower Fund comments that the jury's verdict "is not supported by any evidence . . . and objectively erroneous . . . [and] can only be explained as being the result of passion and prejudice stemming from the sensational story portrayed by [counsel]." But nowhere in this appeal does Tower Fund make a developed argument that the jury's verdict was unsupported by sufficient evidence, and any such argument has therefore been forfeited. (*Golden Door Properties, LLC v. County of San Diego* (2020) 50 Cal.App.5th 467, 554–555 (*Golden Door*).)

I.     *Leave to Amend*

The trial court denied Tower Fund leave to amend its complaint four times: once when the court sustained GAP's demurrer, twice in ruling on properly noticed motions, and once more on the eve of trial.  We review denial of leave to amend for abuse of discretion.  (*Asiryan v. Medical Staff of Glendale Adventist Medical Center* (2024) 100 Cal.App.5th 947, 973; *Ventura29 LLC v. City of San Buenaventura* (2023) 87 Cal.App.5th 1028, 1036 (*Ventura29*).)  The burden is on the plaintiff to demonstrate the propriety of the amendment.  (*Ventura29, supra,* 87 Cal.App.5th at p. 1037.)

Tower Fund separately challenges each of the four decisions made by the trial court.  We conclude the trial court did not abuse its discretion in denying the requests for leave to amend, as Tower Fund's offered amendments were either futile or failed to state a cause of action.  Additionally, Tower Fund's challenge to the ruling on the demurrer is forfeited.

A.     *Demurrer*

The first amended complaint contained two theories of fraud and negligent misrepresentation.  The first theory was that sometime during 2014, while the details of the partnership were being negotiated, GAP decided Timbers should be the project developer instead of Tower Development.  According to Tower Fund, rather than disclose its decision immediately, GAP allowed the negotiations to proceed, then sprang the new condition on Tower Fund when there was only one week left on Tower Fund's contract to buy the property.  This left Tower Fund with a choice between the impossible (getting a contract with another partner within seven days), the

11

unpalatable (losing both the property and the $1 million deposit), and acquiescence. Tower Fund chose acquiescence.

The second theory was promissory fraud: that GAP had signed the Lagoons agreement without ever intending to perform on it. However, Tower Fund expended only two sentences on this theory in its opposition to GAP's eventual demurrer; it did not cite the governing case, *Beckwith v. Dahl* (2012) 205 Cal.App.4th 1039, 1060–1061, did not obtain a specific ruling on the promissory fraud theory from the trial court, and never raised that theory again. Nor did Tower Fund discuss the issue in its appellate briefing. Therefore, it has been forfeited. (*Golden Door, supra,* 50 Cal.App.5th at pp. 554–556.)

The trial court ruled on GAP's demurrer to the fraud and negligent misrepresentation claims in May 2017. The hearing was not reported, and while the court's tentative ruling indicated the demurrer would be sustained with leave to amend, the minute order reflected that it was sustained without leave to amend. The trial court quoted the relevant paragraphs from the first amended complaint explaining Tower Fund's primary theory, but ruled the theory was not pled with sufficient specificity.

Tower Fund devotes only one paragraph of its opening brief to discussing this ruling, including no citations to authority and only one citation to the record. Further, the citation does not support the argument made: that the trial court simply decided to view this litigation as a "garden variety breach of contract case." The quoted phrase comes from the first page of the tentative ruling and is not the assessment of the trial court; it is the court's summary of GAP's argument. Nothing in the tentative ruling or minute order indicates the court adopted that argument. By failing to properly develop or support its challenge to the trial court's ruling on the

12

demurrer, Tower Fund has forfeited that challenge. (*DFS Group, L.P. v. County of San Mateo* (2019) 31 Cal.App.5th 1059, 1086; see also *Central Valley Gas Storage, LLC v. Southam* (2017) 11 Cal.App.5th 686, 694–696.)

B.     *First Noticed Motion*

The trial court also denied Tower Fund's request to amend its complaint "to clarify" that it could pursue a rescission remedy based on "mistake, duress and fraud" in the wake of the court's ruling on the demurrer. The court ruled that Tower Fund "cannot now seek rescission on the basis of 'mistake, duress and fraud,' especially where such facts are not alleged in the complaint."

Here again Tower Fund does not fully develop its argument that the ruling was improper. It cites one case for the proposition that a plaintiff can seek alternative remedies prior to trial, and flatly asserts that its motion was not a request for reconsideration. However, it does not discuss the trial court's finding that there were no facts alleged in the complaint to support a rescission remedy.

The party seeking rescission bears the burden of pleading entitlement to it. (See *Marzec v. California Public Employees Retirement System* (2015) 236 Cal.App.4th 889, 914; *Quindt v. Kilpatrick* (1950) 96 Cal.App.2d 824, 826.) Neither the breach of contract cause of action nor the declaratory relief claim included any allegations of mistake, duress, or fraud as required for rescission. (Civ. Code, § 1689, subd. (b)(1).) The addition of an unsupported rescission remedy to those causes of action would be futile, and the trial court was not obliged to permit it. (*Foroudi v. Aerospace Corporation* (2020) 57 Cal.App.5th 992, 1000–1001.) The trial court did not abuse its discretion when it denied this motion for leave to amend.

C.     *Second Noticed Motion*

In December 2019, Tower Fund filed another motion to amend its complaint.  The proposed new complaint would revive the fraud and negligent misrepresentation claims.  It alleged that Tower Fund was not informed about Oaktree's acquisition of Timbers until August 2014, that in September 2014 Oaktree shared sensitive information about the project with Timbers and secretly solicited a development plan from Timbers, and that in September 2014 Oaktree told Timbers it would only complete the deal with Tower Fund if Timbers was the developer.  Tower Fund claimed it received this information in depositions that were taken after the ruling on the prior motion.

GAP opposed the motion on four grounds, arguing it was an improper motion for reconsideration of the prior rulings, the proposed new claims were identical to claims raised in a separate lawsuit, Tower Fund did not act with proper diligence, and the claims themselves were meritless.  The trial court adopted three of those arguments, denying Tower Fund's motion because of the age of the case, finding unexplained delay in filing the motion, and finding the allegations and evidence insufficient to establish fraud.  Tower Fund now argues that this was an abuse of discretion because there was no delay, the court improperly "weighed the evidence," and calendaring issues alone are not a sufficient reason to deny such a motion.

We find no abuse of discretion because we agree with the trial court that the allegations and evidence of fraud were insufficient.  "[I]f the proposed amendment fails to state a cause of action, it is proper to deny leave to amend." (*Foxborough v. Van Atta* (1994) 26 Cal.App.4th 217, 230.)  The new allegations of the proposed amended complaint followed the same theory Tower Fund previously asserted, and which remains its theory on appeal—

14

that GAP had a plan to substitute Timbers in as the project developer, but waited to execute until Tower Fund had no practical ability to object. This theory does not support a fraud cause of action.[8]

The elements of fraud are (1) misrepresentation, (2) knowledge of falsity, (3) intent to defraud, (4) actual and justifiable reliance, and (5) damages. (*Berry v. Frazier* (2023) 90 Cal.App.5th 1258, 1268.) The alleged misrepresentation here is GAP's concealment of its affiliation with Timbers and its intention to install Timbers as the developer. However, to establish fraud by concealment, Tower Fund must plead and prove it was unaware of the facts concealed. (*Lovejoy v. AT&T Corp.* (2004) 119 Cal.App.4th 151, 157; see also *Oakland Raiders v. Oakland-Alameda County Coliseum, Inc.* (2006) 144 Cal.App.4th 1175, 1186 [the party who discovers a fraud and nevertheless enters into a contract has waived the fraud claim].) The pleadings and evidence demonstrate the opposite.

The allegations of the proposed amended complaint indicate that all material facts were disclosed to Tower Fund before it signed any binding contract with GAP. Tower Fund's agreement to negotiate with Oaktree, executed in August 2014, was neither binding nor exclusive. Oaktree had no obligation to disclose its plans or move forward, and Tower Fund was free to seek other partners.

Tower Fund knew Oaktree had acquired Timbers when the acquisition was publicly announced in August 2014, four months before the execution of any contract between Tower Fund and GAP. Tower Fund likewise knew GAP wanted Timbers to be the developer before it signed the Lagoons agreement.

---

[8]    Tower Fund provides no separate discussion of the negligent misrepresentation claim on appeal, nor did it do so at trial. Therefore, we likewise treat the two causes of action as a single claim of fraud.

15

Tower Fund signed the Lagoons agreement anyway. Tower Fund made a business decision to accept Oaktree's terms. The lack of other attractive options does not transmute those terms into a fraud.[9]

Because we conclude Tower Fund's proposed amended complaint did not plead or disclose evidence of fraud, we need not discuss Tower Fund's arguments regarding delay and calendaring issues.

### D.    *Trial Request*

Tower Fund again requested leave to amend just before trial, albeit without making the motion properly, and renewed its request during trial. Those requests were denied. Tower Fund argues the denial was improper, for all the same reasons it claims the previous denials were improper. For the reasons already given, we disagree.

### II.    *Rescission and Damages Evidence*

At trial, the court precluded Tower Fund from introducing evidence or making an argument for either rescission or restitution. Tower Fund contends it should have been permitted to seek rescission based on mistake, and restitution based on breach of contract. We generally review the exclusion of evidence for abuse of discretion. (*Applied Medical Distribution Corp. v. Jarrells* (2024) 100 Cal.App.5th 556, 587.) Tower Fund asserts, without a directly supportive citation, that we should review this decision de

---

[9]    On reply, Tower Fund claims GAP prevailed below by consistently mischaracterizing the "secret plan" alleged by Tower Fund. However, Tower Fund concedes that the trial court grasped the "essence" of the fraud claims in its ruling. And for the reasons given, the trial court correctly denied leave to assert those claims.

16

novo because it goes to the proper measure of damages. We would affirm under either standard.

## A. *Mistake*

Tower Fund argues certain testimony at trial should have entitled it to submit evidence and argument supporting a request for rescission of the Lagoons agreement. Mr. Derek Smith, who assisted in drafting the agreement, twice testified that section 7.04, the provision Tower Fund accused GAP of breaching, should have been more closely edited prior to signing. The first sentence of section 7.04 reads: "Notwithstanding anything to the contrary contained in this Agreement, any agreements with an Affiliate of any Member must be approved by the non-Affiliated Members, and no other fees or compensation will be paid by the Company to any Member or any of its Affiliates." Tower Fund argued that this required GAP to obtain Tower Fund's approval before signing any contracts with Timbers.

Mr. Smith disagreed with Tower Fund's interpretation, testifying that such a reading of section 7.04 created conflicts with other provisions of the Lagoons agreement, which selected Timbers as the project developer and authorized payment of fees to affiliates at market rates. In response to a question from GAP's counsel about the opening sentence of section 7.04, Mr. Smith said, "we should have deleted that sentence, given this context. It was a mistake. And to be fair, our lawyers missed it." Tower Fund's counsel later followed up, asking: "You said, [']Gee, it must have been a mistake by the lawyers.['] On what do you base that comment, sir?" In response, Mr. Smith repeated: "[F]or there to be an argument, ever, that [Tower Fund] didn't approve Timbers or that [Tower Fund] could ever try to say they didn't

approve Timbers. That, in hindsight, I say was either a mistake and something our lawyers should have caught, or I should have caught."

The witness's use of the word "mistake" is not dispositive because not all mistakes permit rescission. (See *Hedging Concepts, Inc. v. First Alliance Mortgage Co.* (1996) 41 Cal.App.4th 1410, 1421 (*Hedging Concepts*).) As defined by the relevant statutes, "[m]istake may be either of fact or law." (Civ. Code, § 1576.) Mistake of fact involves "ignorance or forgetfulness of a fact . . . material to the contract" or "[b]elief in the present existence of a thing material to the contract, which does not exist, or in the past existence of such a thing, which has not existed." (Civ. Code, § 1577.) Mistake of law requires "misapprehension of the law by all parties . . . and all making substantially the same mistake" or "misapprehension of the law by one party, of which the others are aware at the time of contracting, but which they do not rectify." (Civ. Code, § 1578; see also *Dowling v. Farmers Ins. Exchange* (2012) 208 Cal.App.4th 685, 699.)

Tower Fund does not explain how the mistake identified in the above testimony would qualify as a mistake of either law or fact. Essentially, the witness said the contract could have forestalled Tower Fund's arguments if it had been better drafted. Tower Fund cites no authority which suggests regret over poor draftsmanship should result in rescission of a contract.

Tower Fund cites one California case, which involved a plaintiff who misunderstood the tax consequences of establishing a trust. (*Walton v. Bank of California, N.A.* (1963) 218 Cal.App.2d 527, 545–546.) The plaintiff there did not prevail on her mistake theory (*id.* at pp. 542–547), and the issues here involve neither taxes nor trusts. Mr. Smith's testimony did not reveal confusion about the existence or nonexistence of a "thing," or ignorance of a given "fact." Likewise, there was no misapprehension of law which was

18

shared by all parties, nor did Tower Fund suffer a misapprehension of law which GAP knew about and failed to correct.

The trial court did not err in preventing Tower Fund from requesting rescission based on mistake.

B.  *Restitution*

Tower Fund argues restitution is a proper remedy for breach of contract and should have been submitted to the jury.[10]  We need not discuss this issue because Tower Fund has failed to make the required showing of prejudice.  (*TriCoast Builders, Inc. v. Fonnegra* (2024) 15 Cal.5th 766, 785–786 (*TriCoast*).)  Here, the jury found Tower Fund had failed to perform its obligations under the contract, resulting in a failure to establish an element of its claim.  (*Richman v. Hartley* (2014) 224 Cal.App.4th 1182, 1185 [stating elements of breach of contract claim].)  Since Tower Fund failed to prove all the other elements of its cause of action, it was not harmed by the exclusion of a certain theory of damages.

III.  *Instructions*

Tower Fund argues the trial court should have granted a "directed verdict" and given jury instructions interpreting sections 7.01 and 7.04 in the Lagoons agreement.  Tower Fund contends that its specific right to approve

---

[10]  Tower Fund attempts to incorporate by reference the arguments made in its trial court motion.  Incorporation by reference of a trial brief in the clerk's transcript is improper, and may result in forfeiture of the arguments so incorporated.  (*People ex rel. Reisig v. Acuna* (2017) 9 Cal.App.5th 1, 33–34; c.f. *In re Marriage of Shaban* (2001) 88 Cal.App.4th 398, 408–410 [the additional time, space, and examination that come with appeals call for original work].)

agreements with GAP affiliates, contained in section 7.04, "overrides" the general authority of the Lagoons executive committee, contained in section 7.01, to make contracts. Here again we need not discuss the merits of the argument, for two reasons. First, although Tower Fund's motion for directed verdict was filed on the afternoon of October 4, 2022, while the jury was deliberating, there is no indication that the court ever ruled on the motion, or that Tower Fund sought such a ruling prior to the verdict. Therefore, the issue is forfeited. (*Golden Door, supra,* 50 Cal.App.5th at p. 556.)

Second, Tower Fund cannot show prejudice, because the jury did not reach the issue raised by the motion. (*TriCoast, supra,* 15 Cal.5th at pp. 785–786.) The provisions at issue regarded the powers of the Lagoons executive committee and the rights of Tower Fund. But as already noted, the jury found Tower Fund failed to perform its obligations, none of which were found in those sections. Therefore, Tower Fund was not harmed by any failure to instruct about which of those sections should "override" the other.

IV. *Closing Arguments*

Finally, Tower Fund argues that the comments made by GAP's counsel during closing arguments prejudiced and confused the jury. To preserve this argument for appeal, Tower Fund was required to object at trial and move for mistrial or seek a curative admonition. (*Cassim v. Allstate Ins. Co.* (2004) 33 Cal.4th 780, 794.) These requirements allow the trial court a chance to correct the issue and avoid the necessity of a new trial. (*Id.* at p. 795.) There is one exception: where "the misconduct is so persistent that an admonition would be inadequate to cure the resulting prejudice." (*Id.* at pp. 794–795.) However, an admonition would be inadequate "only in extreme cases." (*Rayii v. Gatica* (2013) 218 Cal.App.4th 1402, 1412.)

20

There is no indication in the record that counsel for Tower Fund objected to any of the comments made by GAP's counsel, moved for a mistrial, or sought any curative admonition. While the court did intervene on its own at one point, the intervention was apparently triggered by counsel's use of a four-letter word, which was a breach of decorum entirely separate from the substance of the comments. In response to the argument that this issue has been forfeited, Tower Fund points to its motion for new trial. But "[r]aising the issue for the first time in a posttrial motion is insufficient because the trial court has no ability to correct the misconduct at that point." (*Bigler-Engler v. Breg, Inc.* (2017) 7 Cal.App.5th 276, 295.) By failing to object, move for mistrial, or seek an admonition during trial, Tower Fund forfeited this issue.[11]

V.     *Conclusion*

Tower Fund asserts that the "rootage" of all the alleged errors here was the trial court's decision to keep the fraud claims out of the case. Yet in response to GAP's demurrer, Tower Fund forfeited a promissory fraud theory in favor of a fraudulent concealment theory which could not succeed. Each subsequent motion to amend sought to revive that same theory. The trial court was not required to let Tower Fund advance a flawed claim to the jury. Nor was it required to let Tower Fund argue rescission based on mistake

---

[11]     For the first time on reply, Tower Fund raises an argument that counsel for GAP intentionally "conflate[d]" Tower Fund with other individuals. Tower Fund does not support its argument with citations to legal authority, nor does it explain what legal consequences the argument should have. Therefore, this argument is forfeited as well. (*Golden Door, supra,* 50 Cal.App.5th at pp. 554–556.)

simply because GAP thought it should have edited the contract more carefully.

Tower Fund did not properly preserve or present many of its other arguments. And those it did are foreclosed by the jury's verdict. There was nothing unusual about the sequence of questions on the verdict form, and the first question, asking whether Tower Fund had performed its obligations under the contract, was not the subject of any controversy before the verdict was given. Nor was there any developed argument on appeal that the verdict was unsupported. Because the jury found against Tower Fund on the first element of the cause of action presented to them, Tower Fund cannot establish prejudice based on how the other elements were handled.

## DISPOSITION

The judgment of the trial court is affirmed. Respondent shall recover its costs on appeal.

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**


ZUKIN, Acting P. J.

WE CONCUR:


COLLINS, J.


MORI, J.

22